## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.

JOHN F. BATES,
      Plaintiff,

vs.

JANET YELLEN, as Secretary,                **COMPLAINT**
U.S. Department of the Treasury,
Internal Revenue Service,
      Defendant.
_____/

    Plaintiff, John F. Bates ("BATES"), by his undersigned counsel, and pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq*., ("Title VII"), as well as the anti-retaliation provision thereto, 42 U.S.C. Section 2000e-3, hereby files this Complaint against the Defendant, Janet Yellen, as Secretary, United States Department of the Treasury, Internal Revenue Service ("AGENCY"), and in support hereof, the Plaintiff states as follows:

### I.
### JURISDICTION AND VENUE

1. This Court has jurisdiction of this action, pursuant to 42 U.S.C. Section 2000e-5(f) and 28 U.S.C. Section 1345.

2. Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and 28 U.S.C. Section 1391 (b), because it is where a substantial part of the events or omissions, giving rise to the causes of action herein, occurred.

3. The Plaintiff brings this action for unlawful retaliation, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3 (a), as well as under claims for a hostile work environment and disparate treatment, under Title VII of the Civil Rights Act of 1964, as amended, for retaliation, 42 U.S.C. Section 2000e-(2)(a).

4. Plaintiff, John F. Bates ("BATES"), is employed by the United States Department of the Treasury, Internal Revenue Service, as a Special Agent, in Plantation, Broward County, Florida.

5. Defendant, Janet Yellen, as Secretary, of the United States Department of the Treasury, Internal Revenue Service ("AGENCY"), is the legal AGENCY head, and as such, she is responsible for the personnel policies and practices, as pronounced and implemented, against AGENCY employees, including the Plaintiff, herein.

6. The AGENCY is an "employer," within the meaning of 42 U.S.C. Section 2000e(b).

7. Plaintiff is within the purview of the applicable statute; and hence, he is entitled to the substantive protections of Title VII, as amended, 42 U.S.C. Section 2000e, *et seq*.

8. On April 17, 2017, BATES sought timely Equal Employment Opportunity ("EEO") counseling, in connection with his claim that the AGENCY, had discriminated against him, on the basis of his religion (Christian), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq*, by subjecting him to continuous and on-going workplace harassment.

9.  Furthermore, on July 17, 2017, BATES filed a formal complaint of discrimination, which included claims of disparate treatment, the creation of a hostile work environment, and in addition, the formal complaint contained a claim for reprisal.

10. Consistent with the allegations of the formal complaint of discrimination, Plaintiff brings claims of disparate treatment, a hostile or offensive work environment and retaliation, here, before the federal district court.

11. In addition, prior to April 17, 2017, and continuing through June of 2018, the Plaintiff had been subjected to on-going workplace harassment, for example, exacerbated by management's repeated failure to approve the Plaintiff's bona fide requests to transfer to other work groups, of which similar requests were repeatedly honored for other employees within the Miami Field Office of IRS-CI-1.

12. Furthermore, as a direct and proximate result of engaging in protected activity, the Plaintiff was subjected to unlawful retaliation, including, but not limited to, a ten-day suspension without pay beginning on May 12, 2017, denial of a routinely scheduled within grade increase, removal from the application process for an attaché positions and these cumulative actions, resulted in the creation of a hostile work environment.

13. On July 30, 2020, the AGENCY entered its Final Agency Decision ("FAD"), rejecting BATES' administrative claims of workplace discrimination; and this case has been timely filed with the federal district court, within ninety (90) days of the issuance of the AGENCY's FAD.  [A copy of the AGENCY'S Final Agency Decision is attached hereto, as **EXHIBIT A**].

14. Plaintiff had previously filed a timely appeal with the Equal Employment Opportunity Commission ("EEOC"), Office of Federal Operations, in Washington, D.C., following the issuance of the AGENCY's Final Agency Decision.

15. However, the Plaintiff has requested that the Equal Employment Opportunity Commission, Office of Federal Operations, cease processing his discrimination complaint, in order to enable him, to promptly pursue all available remedies in federal district court. [A copy of the Plaintiff's Request to the EEOC, Office of Federal Operations, to Cease Processing His Appeal, is attached hereto, as **EXHIBIT B**].

16. BATES has satisfied all conditions precedent, for the filing of this action in federal district court; he has exhausted all applicable administrative remedies, and therefore, this action has been properly and timely filed in the federal district court.

17. Over six months have now elapsed since the filing of the Plaintiff's Appeal with the EEOC, Office of Federal Operations, on August 29, 2020 [*See*, the Plaintiff's Administrative Appeal, attached hereto, as **EXHIBIT C**]; and therefore, the Plaintiff is now authorized to file this complaint in the district court.

## II.
## FACTUAL ALLEGATIONS

18. BATES practices a specific denomination of the Christian Faith, and in accordance with the prescriptions of his church, the Easter Holiday for his denomination, was celebrated, from Friday, April 7, 2017, through Sunday, April 9, 2017, and from Friday, April 14, 2017, through Sunday, April 16, 2017.

19. The regular tour of duty for BATES is Monday through Friday, from 9:00 a.m. through 5:30 p.m., however, on Friday, April 7, 2017, the tour of duty ended at 5:30 p.m., and on April 11, 2017, the tour of duty ended at 5:30 p.m.

20. BATES is a member of a class of employees, who have on call status, which is not considered to be "hours of work," if the employee carries and electronic device for the purpose of being contacted to perform work, that may arise during an on-call period; and the employee can make arrangements for another employee to perform that work; *see*, **Internal Revenue Manual** ("IRM") **6.550.1.1.6.7**.

21. BATES is also a member of a class of employees that are "infrequently", placed in "stand-by" status, during which the employee is restricted to a designated post of duty, and he is assigned to be in a state of readiness to perform work, with limitations so substantial that the employee cannot use the time for personal purposes; and this status eliminates the ability of the employee (1) to travel outside the local commuting area; (2) to consume alcoholic beverages; (3) and to conduct any activity that would otherwise prohibit the ability to report immediately, *see*, **Internal Revenue Manual** ("IRM") **6.550.1.1.6.6**.

22. "Stand-by" status requires authorization from the Director of Field Operations ("DFO"), due to the likelihood of a legal requirement to pay overtime wages.

23. Subsequent to BATES' practicing of the teachings of his Christian religious denomination, from April 7, 2027, through April 9, 2017, BATES was reprimanded,

5

both verbally and in writing, by management, more specifically, by Special Supervisory Agent ("SSA"), Karen Wingerd ("WINGERD"), on April 13, 2017.

24. In compliance with the prescriptions and teachings of his religious denomination, as a member of the Christian faith, BATES conducted his religious practices during non-duty hours, which is beyond the scope of WINGERD's authority, and or Agency management, as confirmed by the Internal Revenue Service Manual, and further, through information and belief, similarly situated employees, outside of his protected class, in other words, meaning, employees of other denominations and faiths, were routinely and regularly unrestricted, as well as being uninhibited, by work obligations, by Agency management, during non-duty hours.

25. Similarly situated employees, outside of the Plaintiff's protected class, employees of other denominations and faiths, were routinely and regularly granted the opportunity, to be absent from duty ready status, due to religious observances and religious celebrations.

26. During a meeting in her office on April 13, 2017, WINGERD specifically instructed the Plaintiff, on three (3) occasions, to provide detailed information about his religious practices observed with his wife from April 7, 2017 through April 9, 2017 and to explain why he had chosen to celebrate Easter over a three-day period of time.

27. WINGERD specifically stated at the end of the repeated explanations, that, "I could understand if you were Muslim or you were Jewish, but Easter is just a day."

28. Subsequent to this conversation, WINGERD sent by e-mail, to the Plaintiff, a summary of the April 13, 2017 conversation; and she included an initial punishment, as a form of retaliation, for the exercising of his religious beliefs during non-duty and non-working hours; and these actions by WINGERD violated IRM 9.11.2.11.3, which states, "(a) determination on whether or not an absence is required, is to be based solely on the applicant's religious beliefs; [and] managers will not substitute their knowledge of the employee's religion to indicate that the religious doctrine does not prohibit the employee from working.

29. Following the Plaintiff's observation of a religious holiday, which had been officially sanctioned, mandated, and prescribed, by his Christian denomination, the Defendant employer, acting through the authority of WINGERD, subjected the Plaintiff to an unlawful campaign of retaliation and harassment, by engaging in the following unlawful predicate acts of workplace discrimination:

    (a) On April 13, 2017, the Plaintiff was unlawfully reprimanded, both verbally and in writing, and furthermore, his status as an employee substantially changed, because he was confined to desk duty, ostracized from other members of his work group and precluded from participating in officially sanctioned group and/or social activities, until further notice [*See*, the Reprimand, attached hereto, as **EXHIBIT D**];

    (b) Even though the Plaintiff possessed the requisite professional qualifications and experience, he was denied the opportunity to serve as an Acting Supervisor on

numerous occasions, or even assist co-workers, to the detriment of the work group and other employees at this duty post;

(c) On April 28, 2017, WINGERD conducted a group meeting in West Palm Beach, and during this meeting, she stated her new expectations for responding to her communications and employee arrival at work; her new expectations for employees of Group 6504, included, "*respond* to my phone calls as soon as possible (reasonable to your situation)," and "be accountable—a 30-minute window (to arrive at work), stack (time) at the end of your day, or request leave," *see*, **EXHIBIT E**;

(d) On May 12, 2017, the Plaintiff received a disciplinary notice, proposing the imposition of a ten (10) day suspension, without pay for (1) not responding to WINGERD's e-mail message, and (2) not responding to WINGERD's telephone call, *see*, **EXHIBIT F**, and these false and fraudulent specifications, were imposed in contravention of the group meeting, which was held on April 17, 2017, the suspension did not result from a failure of the employee to follow management's directives, the suspension resulted for the filing of the EEO Complaint on April 17, 2017, and as a direct result of both (1) practicing his religious beliefs in non-duty, non-working hours and (2) creating a hostile work environment, by requiring the Plaintiff to submit to a permanent stand by duty status, seven days per week and twenty four hours per day, due to the requirement  to respond at all times, during

8

non-duty, non-work hours, to telephone calls, text messages and e-mail messages from WINGERD;

(e) In July of 2017, the Plaintiff's routine within grade step increase was scheduled to occur; however, on June 30, 2017, WINGERD submitted a letter, preemptively denying the pending within grade step increase; the letter contained multiple false and fraudulent specifications, regarding the prior performance of BATES, including the false statement of a due date of March 31, 2017, for a completed SAR (Special Agent Report);

(f) On or about October 3, 2017, the Plaintiff was issued an eight-day suspension, *see*, AGENCY documentation, attached hereto, as **EXHIBIT G**, as a direct result of both (1) practicing of his religious beliefs in non-duty, non-working hours and (2) creating a hostile work environment by creating a permanent "Stand-by" duty status, for him; James Lee ("LEE"), the Director of Field Office, was the Agency's Deciding Official in these proceedings;

(g) Prior to completing the decision process, LEE participated in an oral reply to the proposed suspension, without pay with the Plaintiff on July 13, 2017; and during the transcribed oral reply, LEE specifically asked the Plaintiff, if the SAR investigative report had already been completed, on or about February 18, 2017; the Plaintiff stated during this oral reply, that the SAR had been completed and submitted to both WINGERD and the US Attorney's Office of the Southern Judicial District of Florida; the Plaintiff further stated that the investigation was re-

9

directed to include new recommended violations, which require an average of eighteen (18) months of investigative activity;

(h) On or about September 13, 2017, the Plaintiff was rated "Best Qualified" for an attache position with IRS-CI Bogota, Columbia, however, on or about October 10, 2017, the Plaintiff was removed from the application process by the Agency. [See, **EXHIBIT H**, attached hereto].

30. WINGERD had repeatedly demonstrated her lack of investigative experience and incomprehension of the lengthy and difficult investigative process, by imposing unachievable due dates for BATES and other employees; moreover, the fraudulent specifications in the proposed ten (10) day suspension and the within grade denial, demonstrated WINGERD's lack of integrity and violation of the U.S. Treasury Employee Handbook of Ethics for management in ALL administrative proceedings; and furthermore, the proposed ten-day suspension and the within grade denial provided confirmation of the consequences for engaging in workplace protected activity.[*See*, the documentation, attached hereto, as **EXHIBIT I**].

31. These predicate actions, taken together, by AGENCY management, as set forth in Paragraph (a)—(f) above, and imposed by SSA WINGERD, substantially changed the Plaintiff's status, as an employee in the workplace; and moreover, these continued and unjustified predicate acts of discrimination, perpetrated by AGENCY management, clearly subjected the Plaintiff, to retaliation; a hostile work environment and unlawful disparate treatment.

31. These predicate actions, taken together, by AGENCY management, as set forth in Paragraph (a)—(f) above, evidenced discriminatory *animus* by AGENCY management, which were undertaken, with the express authorization of management, and specifically implemented by SSA WINGERD.

32. These predicate actions of retaliation, harassment, and unlawful disparate treatment, as set forth in Paragraph (a)—(f) above, were undertaken, with the express authorization of AGENCY management, and specifically implemented by SSA WINGERD, were entirely pretextual; none of these predicate acts were undertaken with a valid business justification, or a substantiated legitimate business reason.

These predicate acts of retaliation, harassment, and unlawful disparate treatment, as set forth in Paragraph (a)—(f) above, were undertaken, with the express authorization of AGENCY management, and were imposed by WINGERD, in direct response to the exercise of BATES' prior *protected activity*, whereby, he had attempted to obtain a religious accommodation, he had previously requested to be excused from "duty ready" status, for the legitimate purpose of celebrating a religious holiday, as commanded and prescribed by his denomination of the Christian faith.

34. The Agency has no legitimate business justification, or reason, for engaging in predicate acts of harassment, reprisal, and disparate treatment, against the Plaintiff, herein.

35. These predicate actions, as set forth in Paragraphs 28 (a)—(f) above, taken together, by AGENCY management, and imposed by SSA WINGERD, substantially

changed the Plaintiff's status, as an employee in the workplace; and moreover, these continued and unjustified predicate acts of discrimination, perpetrated by AGENCY management, clearly subjected the Plaintiff, to retaliation; a hostile work environment and unlawful disparate treatment.

36. These predicate actions, as set forth in Paragraphs 28 (a)—(f) above, taken together, by AGENCY management, evidenced discriminatory *animus* by AGENCY management, which were undertaken, with the express authorization of management, and specifically implemented by SSA WINGERD.

37. These predicate actions of retaliation, harassment, and unlawful disparate treatment, as set forth in Paragraphs 28 (a)—(f) above, which were undertaken, with the express authorization of AGENCY management, and specifically implemented by SSA WINGERD, were entirely *pretextual*; none of these predicate acts, as set forth in Paragraphs 28 (a)—(f) above, were undertaken, without a valid business justification, or a substantiated legitimate business reason.

38. These predicate acts of retaliation, harassment, and unlawful disparate treatment, undertaken, as set forth in Paragraphs 28 (a)—(f) above, with the express authorization of AGENCY management, were imposed by SSA WINGERD, in direct response to the exercise of BATES' prior *protected activity*, whereby, he had attempted to obtain a religious accommodation; as noted above, he had previously requested to be excused from "duty ready" status, for the legitimate purpose of

celebrating a religious holiday, as commanded and prescribed by his denomination of the Christian faith.

39. The Agency has no legitimate business justification, or reason, for engaging in predicate acts of harassment, reprisal, and disparate treatment, as set forth in Paragraphs 28 (a)—(f) above, against the Plaintiff, herein.

## COUNT I
## (VIOLATION OF TITLE VII—RETALIATION)

40. Plaintiff restates and re-alleges the allegations of Paragraphs 1—39 of the Complaint, as if fully set forth herein.

41. Plaintiff engaged in lawful *protected activity*, when he requested a religious accommodation, as a member of a specific denomination of the Christian faith.

42. In retaliation for Plaintiff's *protected activity*, AGENCY management imposed predicate acts of retaliation, as stated, and set forth in Paragraphs 11, 12, and 28 (a)—(f), of the Complaint.

43. There was a causal connection between BATES' protected activity, and the materially adverse actions, taken against the Plaintiff, by the AGENCY.

44. The retaliation endured by BATES, would clearly dissuade a reasonable employee in his position, from making complaints of discrimination and or harassment in the workplace.

45. The AGENCY, acting through its authorized representatives, principally, through SSA WINGERD, retaliated against BATES, for engaging in workplace protected

activity, in direct violation of Section 704(a) of Title VII, 42 U.S.C. Section 2000e-3 (a).

46. Due to the repeated unlawful conduct of the Defendant, the Plaintiff has retained undersigned counsel, and the Plaintiff is obligated to pay reasonable attorney's fees and costs.

**WHEREFORE**, the Plaintiff, JOHN F. BATES, respectfully requests that this Court enter judgment against the Defendant, JANET YELLEN, as Secretary of the United States Department of the Treasury, Internal Revenue Service, and find that the Defendant indeed violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3(a), for engaging in predicate unlawful acts of retaliation, and order the following additional relief:

A)    Award the Plaintiff actual damages, including appropriate amounts of back pay and front pay, as applicable, as well as compensatory damages;

B)    Award the Plaintiff his costs and a reasonable attorney's fee;

C)    Enjoin the Defendant from continuing its discriminatory practices; and

D)    Grant any and all appropriate relief, which the Court deems to be just, proper, and equitable.

## COUNT II
## (VIOLATION OF TITLE VII--HOSTILE WORK ENVIRONMENT)

47. Plaintiff restates and re-alleges the allegations of Paragraphs 1—39 of the Complaint, as if fully set forth herein.

14

48. As a Christian male, and a member of specific denomination of that faith, the Plaintiff is a member of a protected group.

49. Plaintiff was subjected to unwelcome and actionable religious-based harassment; specifically, he was subjected to numerous predicate adverse actions, by AGENCY management, merely because of his status as a Christian male, and a member of specific denomination of that faith.

50. The religious based harassment, as set forth and stated in Paragraphs 28 (a)—(f) of the Complaint, was specifically grounded upon Plaintiff's status, as a Christian male, and a member of specific denomination of that faith.

51. The religious based harassment, consisted of continuous demeaning and disparaging personnel actions, which were wholly unjustified, and based upon Plaintiff's status as a Christian male, and a member of specific denomination of that faith, and the Defendant was responsible for orchestrating a series of predicate acts of harassment, as stated in Paragraphs 28 (a)—(f) of the Complaint.

52. The actionable religious based harassment, which consisted of a series of predicate acts of discrimination, as stated and set forth in Paragraphs 28 (a)—(f), above, was sufficiently severe or pervasive, to alter the terms and conditions of Plaintiff's employment with the AGENCY.

53. There is a reasonable factual basis, for holding the Defendant employer liable, based upon the religious-based discrimination and harassment, perpetrated by WINGERD; and any reasonable employee in BATES' position would state, on an

objective basis, that he or she, was subjected to a hostile work environment, based upon the pattern and practice of offensive religious based adverse actions, perpetrated by supervisory personnel of the AGENCY.

54. There is a reasonable factual basis for holding the Defendant employer liable, based upon the religious-based discrimination and harassment, perpetrated by WINGERD; and any reasonable employee in BATES' position would state, on a subjective basis, that he or she, was subjected to a hostile work environment, based upon the pattern and practice of adverse actions, perpetrated by supervisory personnel, principally SSA WINGERD.

55. The actionable religious based discrimination and harassment, perpetrated by SSA WINGERD, ultimately resulted in a tangible employment action, imposed against Plaintiff, the imposition of adverse personnel actions, against him, including a suspension which was implemented, without any valid business reason and or justification.

56. As a direct and proximate result of the Defendant's unlawful acts, perpetrated through its agent/employee, SSA WINGERD, the Plaintiff has suffered great and irreparable economic harm and other associated losses.

57. The Defendant Employer failed to take appropriate remedial measures, to end the unlawful discriminatory and harassing conduct, committed by its supervisory personnel, principally, SSA WINGERD.

58. Moreover, because of the Defendant's impermissible religious-based conduct, the Plaintiff has been compelled to file this action; and he has incurred attorney's fees and costs.

**WHEREFORE**, the Plaintiff, JOHN F. BATES, respectfully requests that this Court enter judgment against the Defendant, JANET YELLEN, as Secretary of the United States Department of the Treasury, Internal Revenue Service, and find that the Defendant indeed violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-(2) (a), for engaging in predicate unlawful acts of retaliation, and order the following additional relief:

A) Award the Plaintiff actual damages, including appropriate amounts of back pay and front pay, as applicable, as well as compensatory damages;

B) Award the Plaintiff his costs and a reasonable attorney's fee;

C) Enjoin the Defendant from continuing its discriminatory practices; and

D) Grant, any and all appropriate relief, which the Court deems to be just, proper, and equitable.

## COUNT III
## (VIOLATION OF TITLE VII-UNLAWFUL DISPARATE TREATMENT)

59. Plaintiff restates and re-alleges the allegations of Paragraphs 1—39 of the Complaint, as if fully set forth herein.

60. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e)-2(a), *et seq.,* prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions, and privileges of one's employment, based upon religious classifications, considerations, or national origin based, reasons.

61. The Plaintiff is a Christian male, and he is a member of a specific Christian denomination, who celebrates the Easter Holiday, on specific days, which may differ from the celebration of this Holiday, on a more traditional day of the Christian religious calendar.

62. Despite Plaintiff's sincere religious beliefs, he was treated differently, from similarly situated employees, outside of his protected class, specifically, Special Agents, of different religious faiths and denominations; the Plaintiff was denied religious accommodations, whereby in contrast, and similarly situated Special Agents, outside of his protected class, were routinely and regularly granted religious accommodations.

63. BATES was subjected to adverse employment actions, including, but not limited to, being placed, unjustifiably, on an eight-day suspension.

64. As a direct and proximate result of the Defendant's unlawful acts, BATES has suffered great and irreparable economic harm and other associated losses.

65. The Defendant Employer failed to take appropriate remedial measures, to end the unlawful and discriminatory, disparate treatment.

66. Moreover, as a further result of the Defendant's unlawful religious-based conduct, the Plaintiff has been compelled to retain undersigned counsel; and he has incurred fees and costs.

**WHEREFORE**, the Plaintiff, JOHN F. BATES, respectfully requests that this Court enter judgment against the Defendant, JANET YELLEN, as Secretary of the Treasury, Internal Revenue Service; and find that the Defendant indeed violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-2(a), for engaging in an unlawful act of disparate treatment, contrary to the law, and order the following additional relief:

A) Award the Plaintiff actual damages, including appropriate amounts of back pay and front pay, as applicable, as well as compensatory damages;

B) Award the Plaintiff his costs and a reasonable attorney's fee;

C) Enjoin the Defendant from continuing its discriminatory practices; and

D) Grant any and all appropriate relief; which the Court deems to be just, proper, and equitable.

### Demand for Jury Trial

The Plaintiff demands trial by jury of all issues so triable.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Plaintiff
One Ten Tower
110 S.E. 6th Street
Suite 1700
Ft. Lauderdale, Florida 33316
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-Mail: labor@markjberkowitz.com
Fla. Bar No. 369391


/s/ Mark J. Berkowitz
By: Mark J. Berkowitz


Dated on this 9th day of May, 2021.