**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

**CASE NO. 21-cv-60976-HUNT**

JOHN F. BATES,
       Plaintiff,

vs.

JANET YELLEN, as Secretary,      **SECOND AMENDED COMPLAINT**
U.S. Department of the Treasury,
Internal Revenue Service,
       Defendant.
_____/

     Plaintiff, John F. Bates ("BATES"), by his undersigned counsel, and pursuant to the

provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et*

*seq*., ("Title VII"), as well as the anti-retaliation provision thereto, 42 U.S.C. Section 2000e-3,

hereby files this Second Amended Complaint against the Defendant, Janet Yellen, as Secretary,

United States Department of the Treasury, Internal Revenue Service ("AGENCY"), and in support

hereof, the Plaintiff states as follows:

**I.**
**INTRODUCTION**

1.   In this action, Plaintiff John F. Bates, contends that he was celebrating his Easter Holiday,

     from Friday, April 7, 2017, through Sunday, April 9, 2017,[1] while he had been placed on an

_____

[1] Plaintiff belongs to a particular sect of Christianity, and pursuant to his faith, in this denomination, he celebrates the Easter Holiday, over a period of three days.

"on call," non-active-duty status, and on April 7, 2017, while he was celebrating the Easter Holiday, Plaintiff received an e-mail message from his immediate supervisor, Supervisory Special Agent, Karen Wingerd. ("WINGERD").

2.  From April 10, 2017 to April 12, 2017, Plaintiff had been stationed in Puerto Rico, serving a search warrant; and he did not return to his office in South Florida, until April 13, 2017; and upon his return to the office, Plaintiff informed WINGERD that he had been celebrating his Easter Holiday, from April 7, 2017 to April 9, 2017, however, WINGERD immediately chastised him for celebrating Easter, over a three day period; she also derisively questioned his religious faith; and immediately thereafter, WINGERD promptly confined him to desk duty, with a reference that BATES had been celebrating Easter, with his wife, and WINGERD also promptly subjected him to various predicate acts of retaliation, and the acts of retaliation, which comprised an adverse action, became so severe and pervasive, that Plaintiff's work place constituted a hostile work environment.

3.  In short, after asserting the practice of his particular religious faith to management, on April 13, 2017, BATES was subjected to continuous ridicule, harassment and intimidation in the workplace, and he was subjected to direct evidence of discriminatory *animus*, by WINGERD, which substantively changed his status as an employee of the Agency.

4.  The workplace harassment, imposed by WINGERD, against BATES, became so severe and pervasive that he was at her "beck and call," twenty-four hours per day, seven days per week, he needed to be ready to answer WINGERD's demands at a moment's notice,

2

creating a work environment, which was saturated with ridicule, intimidation and derision, this environment forms the basis of the retaliation and hostile work environment claims.

## II.
## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action, pursuant to 42 U.S.C. Section 2000e-5(f), and 28 U.S.C Section 1345.

6. Venue is proper in this judicial district, under 42 U.S.C. Section 2000e-5(f)(3) and 28 U.S.C. Section 1391 (b), because it is where a substantial part of the events or omissions, giving rise to the causes of action, herein, occurred.

7. The Plaintiff brings this action for unlawful discrimination, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3 (a), as well as for a claim constituting a hostile work environment, and further, for an additional claim, constituting unlawful retaliation, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-2 (a).

8. Plaintiff, John F. Bates ("BATES"), at all material times herein, was employed by the United States Department of the Treasury, Internal Revenue Service, as a Special Agent, in Plantation, Broward County, Florida.

9. Defendant, Janet Yellen, as Secretary, of the United States Department of the Treasury, Internal revenue Service ("Agency"), is the legal Agency head, and as such, in this role, she is responsible for the personnel policies and practices, as pronounced and implemented, with respect to Agency employees, including the Plaintiff, herein.

10. The Agency is an "employer," within the meaning of 42 U.S.C. Section 2000e(b).

11. Plaintiff is within the purview of the applicable statute and he is subject to its protections; and hence, he is entitled to the substantive protections of Title VII, as amended, 42 U.S.C. Section 2000e, *et seq*.

12. On April 19, 2017, BATES sought timely Equal Employment Opportunity ("EEO") counseling, in connection with his claim that the Agency, had discriminated against him, on the basis of his religion (a particular sect of Christianity), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq., by subjecting him to continuous and on-going supervisory workplace harassment.

13. Furthermore, on July 17, 2017, BATES filed a formal complaint of discrimination, which included claims of disparate treatment, the creation of a hostile work environment, and in addition, the formal complaint contained a claim for reprisal.

14. Consistent with the allegations of the formal complaint of discrimination, Plaintiff brings claims of disparate treatment, a hostile or offensive work environment and retaliation, here, before the federal district court.

15. In addition, prior to April 19, 2017, and continuing through June of 2018, the Plaintiff had been subjected to on-going workplace harassment, for example, exacerbated by management's repeated failure to approve the Plaintiff's bona fide requests to transfer to other work groups, of which similar requests were repeatedly honored for other employees within the Miami Field Office of IRS-CI-1.

4

16. Furthermore, as a direct and proximate result of engaging in protected activity, the Plaintiff was subjected to unlawful retaliation, including, but not limited to, a ten-day suspension without pay beginning on May 12, 2017, denial of a routinely scheduled within grade increase, removal from the application process for an attaché position and these cumulative actions, resulted in the creation of a hostile work environment.

17. On July 30, 2020, the AGENCY entered its Final Agency Decision ("FAD"), rejecting BATES' administrative claims of workplace discrimination; and this case has been timely filed with the federal district court, within ninety (90) days of the issuance of the AGENCY's FAD.  [A copy of the AGENCY'S Final Agency Decision, was previously attached to the Complaint, as **EXHIBIT A**].

18. Plaintiff had previously filed a timely appeal with the Equal Employment Opportunity Commission ("EEOC"), Office of Federal Operations, in Washington, D.C., following the issuance of the AGENCY's Final Agency Decision.

19. However, the Plaintiff has requested that the Equal Employment Opportunity Commission, Office of Federal Operations, cease processing his discrimination complaint, in order to enable him, to promptly pursue all available remedies in federal district court. [A copy of the Plaintiff's Request to the EEOC, Office of Federal Operations, to Cease Processing His Appeal, was previously attached to the Complaint, as **EXHIBIT B**].

20. BATES has satisfied all conditions precedent, for the filing of this action in federal district court; he has exhausted all applicable administrative remedies, and therefore, this action has been properly and timely filed in the federal district court.

21. Over six months have now elapsed since the filing of the Plaintiff's Appeal with the EEOC, Office of Federal Operations, on August 29, 2020 [*See*, the Plaintiff's Administrative Appeal, previously attached to the Complaint, as **EXHIBIT C**]; and therefore, the Plaintiff is now authorized to file this complaint in the district court.

### III.
### FACTUAL ALLEGATIONS

22. BATES practices a specific denomination of the Christian Faith, and in accordance with the prescriptions of his church, the Easter Holiday for his denomination, was celebrated, from Friday, April 7, 2017, through Sunday, April 9, 2017, and from Friday, April 14, 2017, through Sunday, April 16, 2017.

23. The regular tour of duty for BATES is, Monday through Friday, from 9:00 a.m. through 5:30 p.m., however, on Friday, April 7, 2017, the tour of duty ended at 5:30 p.m., and on April 11, 2017, the tour of duty ended at 5:30 p.m.

24. BATES is a member of a class of employees, who have an "on-call" status, which is not considered to be "hours of work," and if the employee carries an electronic device for the purpose of being contacted to perform work, that may arise during an "on-call" period; and the employee can make arrangements for another employee to perform that work; *see*, **Internal Revenue Manual** ("IRM") **6.550.1.1.6.7**.

25. BATES is also a member of a class of employees that are "infrequently," placed in "stand-by" status, during which, the employee is restricted to a designated post of duty, and he is assigned to be in a state of readiness to perform work, with limitations so substantial that

the employee cannot use the time for personal purposes; and this status eliminates the ability of the employee (1) to travel outside the local commuting area; (2) to consume alcoholic beverages; (3) and to conduct any activity that would otherwise prohibit the ability to report immediately, *see*, **Internal Revenue Manual** ("IRM") **6.550.1.1.6.6**.

26. "Stand-by" status requires authorization from the Director of Field Operations ("DFO"), due to the likelihood of a legal requirement to pay overtime wages.

27. Subsequent to BATES' practicing of the teachings of his Christian religious denomination, from April 7, 2027, through April 9, 2017, BATES was reprimanded, both verbally and in writing, by management, more specifically, by Special Supervisory Agent ("SSA"), Karen Wingerd ("WINGERD"), on April 13, 2017.

28. In compliance with the prescriptions and teachings of his religious denomination, as a member of the Christian faith, BATES conducted his religious practices during non-duty hours, which is beyond the scope of WINGERD's authority, and or Agency management, as confirmed by the Internal Revenue Service Manual, and further, Plaintiff maintains that he was subjected to direct evidence of discrimination by WINGERD, in that, she derisively stated, "I could understand if you were Muslim or you were Jewish, but Easter is just a day."

29. Moreover, as further direct evidence of discrimination, during a meeting in her office on April 13, 2017, WINGERD specifically instructed the Plaintiff, on three (3) occasions, to provide detailed information about his religious practices, observed with his wife from April 7, 2017 through April 9, 2017, and to explain why he had chosen to celebrate Easter over a three-day period of time.

30. Subsequent to this conversation, WINGERD sent, by e-mail, to the Plaintiff, which was a summary of their April 13, 2017 conversation; and she included an initial punishment, as a form of retaliation, confining him to desk duty, for the exercising of BATES' religious beliefs, during non-duty and non-working hours; and these actions by WINGERD violated IRM 9.11.2.11.3, which states, "(a) determination on whether or not an absence is required, is to be based solely on the applicant's religious beliefs; [and] managers will not substitute their knowledge of the employee's religion to indicate that the religious doctrine does not prohibit the employee from working.

31. Following the Plaintiff's observation of a religious holiday, during the weekend on April 7, 2017, which had been officially sanctioned, mandated, and prescribed, by his particular Christian denomination, the Defendant employer, acting through the authority of WINGERD, subjected the Plaintiff to an unlawful campaign of retaliation and harassment, by engaging in the following unlawful predicate acts of workplace discrimination, and these predicate acts, taken together, constitute an adverse employment action, and form the basis for a hostile work environment:

   (a) On April 13, 2017, the Plaintiff was unlawfully reprimanded, both verbally and in writing, and furthermore, his status as an employee substantially changed, because he was confined to desk duty, and this adverse personnel action obviously changed his status, as an employee, since he was ostracized from other members of his work group and he was then precluded from participating in officially sanctioned work

8

group and/or social activities, until further notice [*See*, the Reprimand, previously attached to the Complaint, as **EXHIBIT D**];

(b) Even though the Plaintiff possessed the requisite professional qualifications and experience, he was denied the opportunity to serve as an Acting Supervisor on numerous occasions, or even assist co-workers, to the detriment of the work group and other employees at this duty post;

(c) On April 28, 2017, WINGERD conducted a group meeting in West Palm Beach, and during this meeting, she stated her new expectations for responding to her communications and employee arrival at work; her new expectations for employees of Group 6504, included, "*respond* to my phone calls as soon as possible (reasonable to your situation)," and "be accountable—a 30-minute window (to arrive at work), stack (time) at the end of your day, or request leave," this meeting was closely followed by the issuance of a proposed disciplinary suspension, *see*, the Proposed Disciplinary Suspension, previously attached to the Complaint, as **EXHIBIT E**;

(d) On May 12, 2017,[2] approximately one month after Plaintiff's expression of intention to observe a religious holiday, the Plaintiff received a disciplinary notice, proposing the imposition of a ten (10) day suspension, without pay for (1) not responding to WINGERD's e-mail message, and (2) not responding to

---

[2] The suspension was thereafter confirmed on September 23, 2017.

WINGERD's telephone call, and these false and fraudulent specifications, were imposed in contravention of the group meeting, which was held on April 17, 2017, the suspension did not result from a failure of the employee to follow management's directives, the suspension resulted for the filing of the EEO Complaint on April 17, 2017, and as a direct result of both (1) practicing his religious beliefs in non-duty, non-working hours and (2) creating a hostile work environment, by requiring the Plaintiff to submit to a permanent stand by duty status, seven days per week and twenty four hours per day, due to the requirement to respond at all times, during non-duty, non-work hours, to telephone calls, text messages and e-mail messages from WINGERD, *see*, the Proposed Disciplinary Suspension, previously attached to the Complaint, as **EXHIBIT E**;

(e) The proposed suspension without pay on May 12, 2017, was imposed upon BATES, as of September 23, 2027, based upon the onerous obligation, that BATES was to respond immediately to WINGERD's texts and e-mail communications;

(f) The obligation imposed on BATES, due to the suspension and the requirement that he respond immediately to WINGERD's texts and e-mails, created an extremely onerous work environment for BATES alone, whereby he was reduced to the extreme extent of being at WINGERD's "beck and call," twenty-four hours per day, seven days per week; however, the other members of his work group, under WINGERD, were not subjected to this controlling, intimidating existence; and BATES' status in the work environment was substantively changed, supervisory

10

conduct certainly made him less likely to articulate any form of protected activity in the workplace;

(g) For BATES to be at WINGERS's "beck and call," on a constant, continuing and controlling basis, he became a target of perpetual ridicule, harassment and on-going, ceaseless intimidation, by WINGERD, making it extremely difficult, if not impossible for him to complete his normal job duties;

(h) In July of 2017, the Plaintiff's routine, within grade step increase, was scheduled to occur; however, on June 30, 2017, WINGERD submitted a letter, preemptively denying the pending, within grade step increase; the letter contained multiple false and fraudulent facts and specifications, regarding the prior job performance of BATES, including the false statement of a due date of March 31, 2017, for a completed SAR (Special Agent Report);

(i) On September 15, 2017, WINGERD issued an unsuccessful performance evaluation to BATES, *see*, the Unsatisfactory Performance Evaluation, previously attached to the Complaint, as **EXHIBIT F**;

(j) On or about October 3, 2017, the Plaintiff was issued an eight-day suspension without pay, *see*, AGENCY documentation, previously attached to the Complaint, as **EXHIBIT G**[3], as a direct result of both (1) practicing of his religious beliefs in non-duty, non-working hours and (2) creating a hostile work environment by

---

[3] The suspension memorandum was actually dated September 23, 2017.

creating a permanent "Stand-by" duty status, for him; James Lee ("LEE"), the Director of Field Office, was the Agency's Deciding Official in these proceedings;

(k) Prior to completing the decision process, LEE participated in an oral reply to the proposed suspension, without pay with the Plaintiff on July 13, 2017; and during the transcribed oral reply, LEE specifically asked the Plaintiff, if the SAR investigative report had already been completed, on or about February 18, 2017; the Plaintiff stated during this oral reply, that the SAR had been completed and submitted to both WINGERD and the US Attorney's Office of the Southern Judicial District of Florida; the Plaintiff further stated that the investigation was re-directed to include new recommended violations, which required an average of eighteen (18) months of investigative activity; and

(l) WINGERD created false deadlines for the submission of Special Agent Reports for BATES, without informing him.

32. As a further act of continuing reprisal, or retaliation, on or about September 13, 2017, even though the Plaintiff was rated "Best Qualified" for an attaché position, with IRS-CI Bogota, Columbia, however, on or about October 10, 2017, the Plaintiff was improperly removed from the application process by the Agency, without any valid business reason and or justification.

33. WINGERD had repeatedly demonstrated her lack of investigative experience and incomprehension of the lengthy and difficult investigative process, by imposing unachievable due dates for BATES, and other employees; moreover, the fraudulent

12

specifications in the proposed ten (10) day suspension and the within grade denial, demonstrated WINGERD's lack of integrity and violation of the U.S. Treasury Employee Handbook of Ethics for management, in ALL administrative proceedings; and furthermore, the proposed ten-day suspension and the within grade denial, provided confirmation of the consequences for engaging in workplace protected activity, the assertion of the practice of religious observances. [*See*, the documentation on the within grade denial, previously attached to the Complaint, as **EXHIBIT I**].

34. These predicate actions, taken together, by AGENCY management, as set forth in Paragraph 31 (a)—(l) above, as well as the allegations, as contained in Paragraph 32, herein, and primarily imposed by SSA WINGERD, and or Agency management, substantially changed the Plaintiff's status, as an employee in the workplace; and moreover, these continued and unjustified predicate acts of discrimination, perpetrated by AGENCY management, clearly subjected the Plaintiff, to retaliation; a hostile work environment, and moreover, direct evidence of impermissible and unlawful discrimination.

35. These predicate personnel actions, taken together, constituting an adverse action, specifically taken by AGENCY management, as set forth in Paragraph 29 (a)—(h) above, as well as the allegations, as contained in Paragraph 30, herein, and imposed by SSA WINGERD, and or Agency management, evidenced discriminatory *animus* by AGENCY management, which were undertaken, with the express authorization of management, and specifically implemented by SSA WINGERD.

36. These predicate actions of retaliation, harassment, and unlawful disparate treatment, as set forth in Paragraph 31 (a)—(l) above, as well as the allegations contained in Paragraph 32, herein, and imposed by SSA WINGERD, and or by Agency management, were undertaken, with the express authorization of AGENCY management, and specifically implemented by SSA WINGERD, and these predicate acts of discrimination, were entirely pretextual; none of these unlawful predicate acts of discrimination, were undertaken, with a valid business justification, or a substantiated legitimate business reason.

37. These predicate acts of retaliation, harassment, and unlawful direct evidence of discrimination, as set forth in Paragraph 31 (a)—(l) above, as well as the allegations contained in Paragraph 32, herein, and imposed by SSA WINGERD, were undertaken, with the express authorization of AGENCY management, and these unlawful acts were imposed by WINGERD, in direct response to the exercise of BATES' prior *protected activity*, whereby, he had expressed his practice of an important religious observance, while he had been placed in an "on call" status, during the weekend of April 7, 2017.

38. The Agency has no legitimate business justification, or reason, for engaging in the above-described predicate acts of harassment, reprisal, and direct acts of discriminatory treatment, against the Plaintiff, herein.

39. These predicate acts of retaliation, as set forth in Paragraph 31 (a)—(l) above, as well as the allegations, as contained in Paragraph 30, herein, and imposed by SSA WINGERD, and or Agency management, taken together, by both AGENCY management, and imposed by SSA WINGERD, substantially changed the Plaintiff's status, as an employee, in the workplace;

and moreover, these continued and unjustified predicate unlawful acts of discrimination, perpetrated by AGENCY management, clearly subjected the Plaintiff, to retaliation; a hostile work environment and unlawful direct evidence of discrimination, as illustrated by and set forth in Paragraphs 31 (a)—(l), as well as Paragraph 32.

40. These predicate acts, as set forth in Paragraphs 31 (a)—(l) above, as well as the allegations contained in Paragraph 32, herein, and imposed by SSA WINGERD, and or Agency management, taken together, by AGENCY management, evidenced discriminatory *animus* by AGENCY management, which were undertaken, with the express authorization of management, and specifically implemented by SSA WINGERD.

41. These predicate acts of retaliation, harassment, and unlawful direct acts of discrimination, as set forth in Paragraph 31 (a)—(l) above, as well as the allegations contained in Paragraph 32, herein, and imposed by SSA WINGERD, and or by Agency management, which were undertaken, with the express authorization of AGENCY management, and specifically implemented by SSA WINGERD, were entirely *pretextual*; none of these predicate acts, as set forth in Paragraph 31 (a)—(l) above, and the allegation, as contained in Paragraph 32 above, were undertaken, without a valid business justification, or a substantiated legitimate business reason.

42. These predicate acts of retaliation, harassment, and unlawful direct acts of religious discrimination, were undertaken, as set forth in Paragraph 31 (a)—(l) above, as well as the allegation, as contained in Paragraph 32, and taken, with the express authorization of AGENCY management, were imposed by SSA WINGERD, in direct response to the

exercise of BATES' prior *protected activity*, whereby, he had expressed the practicing of his religious observance, during the weekend of April 7, 2017, and immediately thereafter, in less than one week, WINGERD engaged in predicate acts of retaliation, harassment and acts which evidenced direct and unlawful acts of discrimination.

43. The Agency has no legitimate business justification, or reason, for engaging in predicate acts of harassment, reprisal, and direct discriminatory treatment, as set forth in Paragraph 31 (a)—(l) above, as well as the allegations, as contained in Paragraph 32 above.

## COUNT I
## (VIOLATION OF TITLE VII—RETALIATION)

44. Plaintiff restates and re-alleges the allegations of Paragraphs 1—43 of the Second Amended Complaint, as if fully set forth herein.

45. On April 13, 2017, BATES expressed his opposition to WINGERD, specifically to her rejection of his religious practices and of her prohibition of his celebration of religious practices, as a member of a specific denomination of the Christian faith, and in accordance with the prescriptions of his faith, the Easter Holiday was celebrated, from Friday, April 7, 2017, thorough Sunday, April 9, 2017, and from Friday, April 14, 2017, through Sunday, April 16, 2017.

46. On April 13, 2017, Plaintiff engaged in lawful *protected activity*, when he orally expressed his open opposition to WINGERD's rejection of his religious principles, and or her, in effect, her implicit prohibition of his religious activities, as a member of a specific denomination of the Christian faith.

47. On April 19, 2017, Plaintiff filed an Equal Employment Opportunity Complaint, alleging, *inter alia*, that he had previously expressed opposition to WINGERD's objection to his practicing of his religious faith.

48. On May 12, 2017, approximately one month after Plaintiff's expressed opposition to WINGERD's prohibition of his religious practices, as a member of a specific denomination of the Christian faith, the Plaintiff received a proposal for a ten-day suspension without pay, and this proposal was implemented, as a disciplinary penalty, on September 23, 2017.

49. On June 30, 2017, WINGERD placed the Plaintiff on an unjustified Performance Improvement Plan, based on false statements, and WINGERD also issued a memorandum, denying the Plaintiff's regularly scheduled within grade pay increase.

50. As another act of continuing reprisal, or retaliation, on or about September 13, 2017, even though the Plaintiff was rated "Best Qualified" for an attaché position, with IRS-CI Bogota, Columbia, however, on or about October 10, 2017, the Plaintiff was improperly removed from the application process by the Agency, without any valid business reason and or justification.

51. There was a causal connection between BATES' protected activity, his April 13, 2017, expressed opposition to WINGERD's open hostility and her rejection of his religious practices, as an expression of his religious faith, and the personnel actions taken by management, as set forth in Paragraphs 48—50 of the Second Amended Complaint, which taken together, constitute adverse employment actions.

52. The retaliation endured by BATES, to which he was subjected to by Agency management, would clearly dissuade a reasonable employee in his position, from making complaints of discrimination, and or harassment, in the workplace.

53. The Agency, acting through its authorized representatives, principally, through SSA WINGERD, retaliated against BATES, for engaging in workplace protected workplace activity, specifically, his expressed opposition to WINGERD'S rejection of his religious practices, as indications of his religious faith; and WINGERD's subsequent retaliatory conduct, as set forth in Paragraphs 48—50 of the Amended Complaint, constitutes a direct violation of the anti-retaliation provision of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3 (a).

54. Due to the repeated unlawful conduct of the Defendant, the Plaintiff has retained undersigned counsel, and the Plaintiff is obligated to pay reasonable attorney's fees and costs.

**WHEREFORE**, the Plaintiff, JOHN F. BATES, respectfully requests that this Court enter judgment against the Defendant, JANET YELLEN, as Secretary of the United States Department of the Treasury, Internal Revenue Service, and find that the Defendant indeed violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3(a), for engaging in predicate unlawful acts of retaliation, and order the following additional relief:

A)    Award the Plaintiff actual damages, including appropriate amounts of back pay and front pay, as applicable, as well as compensatory damages;

B)      Award the Plaintiff his costs and a reasonable attorney's fee;

C)      Enjoin the Defendant from continuing its discriminatory practices; and

D)      Grant any and all appropriate relief, which the Court deems to be just, proper, and
equitable.

**COUNT II**
**(VIOLATION OF TITLE VII--HOSTILE WORK ENVIRONMENT)**

55. Plaintiff restates and re-alleges the allegations of Paragraphs 1—43 of the Second Amended
Complaint, as if fully set forth herein.

56. As a Christian male, and a member of specific denomination of that faith, the Plaintiff is a
member of a protected group.

57. Plaintiff was subjected to unwelcome and actionable religious-based harassment;
specifically, he was subjected to numerous predicate adverse actions, when taken together,
by AGENCY management, substantively changed his status in the workplace, merely
because of his status as a Christian male, and a member of specific denomination of that
faith.

58. The religious based harassment, as set forth and stated in Paragraph 31 (a)—(l) and the
allegations contained within Paragraph 32 of the Amended Complaint, were specifically
grounded upon Plaintiff's status, as a Christian male, and a member of specific
denomination of that faith.

59. The religious based harassment, consisted of continuous demeaning and disparaging
adverse personnel actions, which were wholly unjustified, and based upon Plaintiff's status

as a Christian male, and as a member of specific denomination of that faith, hence, the Defendant was responsible for orchestrating a series of predicate acts of harassment, as stated in Paragraphs 31 (a)—(l), as well as the allegations contained in Paragraph 32 of the Amended Complaint.

60. The actionable religious based harassment, which consisted of a series of predicate acts of discrimination and or harassment, as stated and set forth in Paragraph 31 (a)—(l), as well as Paragraph 32 of the Amended Complaint, was sufficiently severe or pervasive, to alter the terms and conditions of Plaintiff's employment with the Agency.

61. BATES was reduced to being at WINGERD's "beck and call," on a constant and continuing bases, exemplified an opening harassing atmosphere, wherein, BATES was singled out from other members of his work group.

62. These acts of harassment were sufficiently severe, regular and pervasive to constitute a hostile work environment and or to significantly influence the Plaintiff, making it difficult, if not impossible to perform his regular job functions.

63. There is a reasonable factual basis, for holding the Defendant employer liable, based upon the religious-based discrimination and harassment, perpetrated by WINGERD; and any reasonable employee in BATES' position would state, on an objective basis, that he or she, was subjected to a hostile work environment, based upon the pattern and the practice of offensive religious based adverse actions, perpetrated by supervisory personnel of the AGENCY.

64. There is a reasonable factual basis for holding the Defendant employer liable, based upon the religious-based discrimination and harassment, perpetrated by WINGERD; and any reasonable employee in BATES' position would state, on a subjective basis, that he or she, was subjected to a hostile work environment, based upon the pattern and practice of adverse actions, perpetrated by supervisory personnel, principally SSA WINGERD.

65. The actionable religious based discrimination and harassment, perpetrated by SSA WINGERD, ultimately resulted in a tangible employment action, imposed against Plaintiff, the imposition of adverse personnel actions, against him, including a suspension which was implemented, without any valid business reason and or justification.

66. WINGERD openly questioned BATES' religious faith and demeaned his sect of Christianity, as compared to other recognized mainstream religious faiths.

67. The Agency is strictly liable for the actionable religious based discrimination and harassment, perpetrated by SSA WINGERD, which ultimately resulted in a tangible employment action, imposed against Plaintiff.

68. The Defendant Employer failed to take appropriate remedial measures, to end the unlawful discriminatory and harassing conduct, committed by its supervisory personnel, principally, SSA WINGERD.

69. As a direct and proximate result of the Defendant's unlawful acts, perpetrated through its supervisory agent/employee, SSA WINGERD, the Plaintiff has suffered great and irreparable economic harm and other associated losses.

70. Moreover, because of the Defendant's impermissible religious-based conduct, the Plaintiff has been compelled to file this action; and he has incurred attorney's fees and costs.

**WHEREFORE**, the Plaintiff, JOHN F. BATES, respectfully requests that this Court enter judgment against the Defendant, JANET YELLEN, as Secretary of the United States Department of the Treasury, Internal Revenue Service, and find that the Defendant indeed violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-(2) (a), for engaging in predicate unlawful acts of retaliation, and order the following additional relief:

A) Award the Plaintiff actual damages, including appropriate amounts of back pay and front pay, as applicable, as well as compensatory damages;

B) Award the Plaintiff his costs and a reasonable attorney's fee;

C) Enjoin the Defendant from continuing its discriminatory practices; and

D) Grant, any and all appropriate relief, which the Court deems to be just, proper, and equitable.

## Demand for Jury Trial

The Plaintiff demands trial by jury of all issues so triable.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Plaintiff
One Ten Tower
110 S.E. 6th Street
Suite 1700
Ft. Lauderdale, Florida 33316
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-Mail: labor@markjberkowitz.com
Fla. Bar No. 369391


/s/ Mark J. Berkowitz
By: Mark J. Berkowitz


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by the Court's electronic filing system, CM/ECF, on this 18th day of April, 2022, to Amy Soto, Assistant U.S. Attorney, Office of the U.S. Attorney, 99 N.E. 4th Street, Suite 300, Miami, Florida 33132.


/s/ Mark J. Berkowitz
By: Mark J. Berkowitz