**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 21-cv-60976-HUNT**

JOHN F. BATES, an individual,

 Plaintiff,

v.

JANET YELLEN, as Secretary,
U.S. Department of the Treasury,
Internal Revenue Service,

 Defendant.
_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW**

 Defendant, Janet Yellen, as Secretary of the Treasury (the "Secretary"), by and through the undersigned Assistant United States Attorney, and pursuant to Federal Rule of Civil Procedure 56, hereby files her Motion for Summary Judgment and Incorporated Memorandum of Law, and in support thereof, states as follows:

**Introduction**

 Plaintiff, John F. Bates, filed his Second Amended Complaint on April 18, 2022, purporting to assert two causes of action under Title VII of the Civil Rights Act of 1964: (1) Retaliation and (2) Hostile Work Environment. 2d Am. Compl. (D.E. 38). In response, the Secretary moved to dismiss the Second Amended Complaint. Mot. to Dismiss Pl.'s 2d Am. Compl. (D.E. 41). The Court dismissed Plaintiff's retaliation claim and struck the allegations regarding Plaintiff's proposal for a ten-day suspension and the imposition of an eight-day suspension from the hostile work environment claim. Order on Def.'s Mot. to Dismiss 2d Am. Compl. (D.E. 45).

In the Second Amended Complaint, Plaintiff alleges that after asserting the practice of his particular religious faith to management,[1] SSA Wingerd stated, "I could understand if you were Muslim or you were Jewish, but Easter is just a day." 2d Am. Compl. ¶ 28. Plaintiff points to Paragraphs 31 and 32 for a "series of predicate acts of harassment" based on his religion. *Id*. ¶ 59. Excluding the allegations related to Plaintiff's suspension, as per the Court's Order on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, Plaintiff recounts a myriad of events he contends were harassing:

1. On April 13, 2017, Plaintiff was reprimanded, verbally and in writing, and assigned to desk duty.

2. Plaintiff was denied the opportunity to serve as an Acting Supervisor on "numerous occasions" and assist co-workers.

3. Plaintiff attended a group meeting where SSA Wingerd conveyed her expectations to her group.

4. Plaintiff was required to be at SSA Wingerd's "beck and call" twenty-four hours a day, seven days a week.

5. Plaintiff was ridiculed, harassed, and intimidated.

6. On June 30, 2017, Plaintiff was denied a within grade step increase by falsifying job performance information.

7. On September 15, 2017, SSA Wingerd issued an unsuccessful performance evaluation.

8. SSA Wingerd created false deadlines for the submission of Plaintiff's reports.

---

[1] Plaintiff alleges that he "practices a specific denomination of the Christian Faith, and in accordance with the prescriptions of his church, the Easter Holiday for his denomination, was celebrated, from Friday, April 7, 2017, through Sunday, April 9, 2017, and from Friday, April 14, 2017, through Sunday, April 16, 2017." 2d Am. Compl. ¶ 22. However, Plaintiff testified that his wife wanted to celebrate Easter the weekend of April 8 and 9, 2017, because she would be out of town. SMF ¶ 26 ("one week early"). The Court may take judicial notice, on its own or upon request by a party, of the fact that Easter in 2017 fell on Sunday, April 16, 2017. Fed. R. Evid. 201.

9. Plaintiff was improperly removed from the application process for an attaché position.[2]

The Secretary now moves for summary judgment because the undisputed material facts establish that no reasonable jury could find that Plaintiff was subject to harassment at work on the basis of his religion. First, Plaintiff has failed to show that his alleged harassment was religiously motivated. Second, Plaintiff has failed to show that his alleged harassment was sufficiently severe or pervasive. As a result, the Secretary is entitled to judgment as a matter of law and the Court should dismiss Plaintiff's hostile work environment claim with prejudice.

## Statement of Material Facts

Pursuant to Local Rule 56.1 for the Southern District of Florida, the Secretary has provided her Statement of Material Facts ("SMF") under separate cover, filed contemporaneously with this Motion and Incorporated Memorandum of Law.

## Memorandum of Law

### A. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, a court must review the evidence and draw all reasonable inferences from the evidence in the light most favorable to the nonmovant. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).

---

[2] The Secretary takes the position that this allegation forms part of Plaintiff's now-dismissed claim for retaliation. *See* 2d Am. Compl. ¶ 32 ("As a further act of **continuing reprisal or retaliation**, . . . Plaintiff was improperly removed from the application process by the Agency, without any valid business reason and or justification.") (emphasis added).

In moving for summary judgment, a movant must show that the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A movant's burden may be discharged by "showing" that there is a lack of evidence to support the nonmovant's case. *Id*. at 325. A showing that there is "some metaphysical doubt as to the material facts" is insufficient to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id*. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

**B. Plaintiff Cannot Establish a Prima Facie Case of Hostile Work Environment**

Title VII provides, in part, that personnel actions affecting federal employees "shall be made free from any discrimination based on" religion. 42 U.S.C. § 2000e-16(a). An employer is responsible for a religiously hostile work environment, and therefore violates Title VII, when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1152 (11th Cir. 2020) (citation omitted). "A hostile work environment claim under Title VII requires proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id*. (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). In order to sustain a hostile work environment claim, an employee must show that (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive as to alter the terms and conditions of employment; and (5) the

employer was responsible for the environment by vicarious or direct liability. *Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

### 1. Plaintiff Has Failed to Show That the Harassment Was Based on His Religion

"Title VII prohibits discrimination; it is not a shield against [perceived] harsh treatment at the work place." *Succar v. Dade Cnty. Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) (citing *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986)). Only conduct that is "based on" religion, may be considered in a religiously-based hostile work environment analysis. *Byrd v. Postmaster Gen.*, 582 F. App'x 787, 790 (11th Cir. 2014). Statements and conduct that do not reference religion are not considered in a religious-based hostile work environment claim. *See Reeves v. DSI Sec. Servs., Inc.*, 395 F. App'x 544, 546 (11th Cir. 2010). An isolated comment, without more, does not prove discriminatory motivation for all other conduct. *Graham v. Mem'l Health Univ. Med. Ctr.*, Case No. CV411-316, 2013 U.S. Dist. LEXIS 141071, at *14-15 (S.D. Ga. Sept. 30, 2013).

Plaintiff bases his hostile work environment claim on one statement that allegedly occurred over the course of five months. Specifically, Plaintiff claims that on April 13, 2017, SSA Wingerd said, "I could understand if you were Muslim or you were Jewish, but Easter is just a day." 2d Am. Compl. ¶ 28. Following SSA Wingerd's alleged statement, Plaintiff points to numerous instances where he believed SSA Wingerd treated him unfairly; however, he has not connected that purported harassment to his religion.

There is simply no evidence, other than Plaintiff's speculation, that the allegedly harassing conduct that followed SSA Wingerd's alleged statement was based on Plaintiff's religion. In fact, Plaintiff's speculation relating to SSA Wingerd's motivation for the alleged harassment is undermined by Plaintiff's own evidence.

For example, Plaintiff testified that he believed SSA Wingerd singled him out to use him as a "guinea pig for what she could do to other employees if they didn't respond to her timely," SMF ¶ 66, and she retaliated against him for filing an EEO complaint. Plaintiff attributed SSA Wingerd's "false" deadlines to her "lack of experience as a field agent." SMF ¶ 90. When asked to explain his basis for believing that SSA Wingerd had interfered in his application process for the attaché position, Plaintiff answered that he believed SSA Wingerd "would have made false statements if she talked to someone about [him] applying for" the attaché position; however, he did not have proof and did not know whether SSA Wingerd actually spoke to someone as part of his application for the attaché position.

At their essence, Plaintiff's allegations are simply that SSA Wingerd, in her capacity as Plaintiff's supervisor, disciplined his misconduct and criticized his work performance. Job performance criticism from a supervisor or manager is a common fact of life in the workplace. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1242 (11th Cir. 2001) ("Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace.").

Plaintiff has failed to show that SSA Wingerd harassed him because of his religion. As such, Plaintiff cannot establish the third element of his prima facie case for religious-based harassment.

**2. Plaintiff Has Failed to Show That the Harassment Was Sufficiently Severe or Pervasive**

To establish that harassment was sufficiently severe or pervasive to alter the terms or conditions of an employee's terms or conditions of employment, the employee must prove that his work environment was both subjectively and objectively hostile. *Richardson v. Dougherty Cnty.*, 185 F. App'x 785, 791 (11th Cir. 2006). First, the employee must establish that he "subjectively perceive[d] the environment to be abusive." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th

Cir. 1999). The employee must then satisfy the objective component by showing that his work environment was one "that a reasonable person would find hostile or abusive." *Id*. To determine whether harassment objectively altered an employee's terms or conditions of employment, courts should consider (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Alansari v. Tropic Star Seafood Inc.*, 388 F. App'x 902, 904-05 (11th Cir. 2010). Additionally, the Supreme Court has held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87 (1998) (internal citation).

Plaintiff has not sufficiently established the fourth element of his hostile work environment claim because the evidence does not support that any harassment he experienced was objectively severe or pervasive. Because Plaintiff obviously perceives the environment as hostile and abusive, the relevant inquiry focuses on whether SSA Wingerd's actions altered the working conditions to such an extent that a reasonable person would find the atmosphere hostile and abusive.

    **a. Frequency of the Conduct**

As to the first factor in the objective analysis, this element is complicated by the fact that most, if not all, of the harassing conduct that Plaintiff alleged was not inherently religiously offensive. Again, statements and conduct unrelated to Plaintiff's religion do not impact the analysis of whether a hostile work environment exists. With that in mind, the harassment is infrequent, as there is one isolated comment in the three years that SSA Wingerd supervised Plaintiff. Such an isolated incident does not suffice to support a claim of hostile work environment. *See, e.g., Caro v. Miami-Dade Cnty.*, 105 F. Supp. 2d 1326, 1329 (S.D. Fla. 2000) (finding one comment

referencing plaintiff's race not "pervasive" and thus insufficiently frequent for a hostile work environment claim).

Assuming, *arguendo*, the facially religion-neutral conduct that Plaintiff contends was due to his religion, the harassment is not frequent. Plaintiff is long on generalities and short on specifics. When pressed, Plaintiff could not confirm whether he had been an acting supervisor under SSA Wingerd prior to April 2017. Plaintiff only recalled serving as an acting supervisor in 2008 for 120 days and for short periods of time between 2009 and 2010. Plaintiff did not remember whether he had served as an acting supervisor from 2012 to 2016. In any event, Plaintiff attributed SSA Wingerd's non-selection for acting supervisor after April 2017 to his filing of an EEO complaint, not his religion.

Plaintiff testified that he "was not at her beck and call like she called [him] every 5 minutes, and [he] had to answer [his] phone every 5 minutes." SMF ¶ 62. Rather, Plaintiff contends that he was at SSA Wingerd's beck and call because she repeatedly said, "you're on call 24/7." SMF ¶ 63. Plaintiff claims that SSA Wingerd said he was on call 24/7 in group meetings and to Plaintiff himself; however, he could not provide specific dates as to when she made such statements. Further, after April 2017, Plaintiff did not recall how many times SSA Wingerd may have called him after his core duty hours because "it was pretty rare for her to -- call [him] after duty hours or on weekends because she herself wouldn't pick up her phone after duty hours on nights or weekends." SMF ¶ 65. Plaintiff also did not "remember getting very many emails from [SSA Wingerd] at night or on weekends," unless there was something that was pending. SMF ¶ 66.

To the extent SSA Wingerd said at Group 6504 meetings that her special agents were on call 24/7, such a statement was said to the group and applied to all Special Agents. Plaintiff does not contend that SSA Wingerd said at a Group 6504 meeting that only he was on call 24/7.

Moreover, Plaintiff's testimony is belied by the very evidence he incorporates by reference in his Second Amended Complaint and relies on to support his claim. The record evidence does not show that SSA Wingerd told Plaintiff that he was on call 24/7. Rather, in SSA Wingerd's e-mail memorializing the April 13, 2017 meeting, SSA Wingerd wrote, "You need to ensure you respond to my messages **in a timely manner**, even if it is on the weekends or during evening hours." Compl. (D.E. 1), Ex. D (emphasis added). In the Group 6504 meeting minutes for April 28, 2017, SSA Wingerd conveyed her expectation that her subordinates "[r]espond to [her] phone calls **as soon as possible (reasonable to [their] situation)**" to the entire group. Compl., Ex. E (emphasis added).

It is notable that Plaintiff, as a recipient of Law Enforcement Availability Pay ("LEAP"), was compensated to perform unscheduled duty hours or be available for work that is not part of his basic workweek. To the extent Plaintiff was unable to work or be available to work for religious reasons, there is no dispute that Plaintiff did not give SSA Wingerd advance notice. Without advance notice, Plaintiff failed to give the agency the opportunity to consider a reasonable religious accommodation—particularly knowing that he had a pending assignment.

As such, this factor weighs against finding that the harassment was objectively pervasive.

### b. Severity of the Conduct

As to the second factor, the severity of the harassment complained of by Plaintiff is insufficient to impose liability on the Secretary. The one instance involving the alleged statement made by SSA Wingerd was far milder than what has been found insufficient to maintain a cause of action for hostile work environment. There are no allegations that SSA Wingerd used religious slurs against Plaintiff.

Although Plaintiff contends that he was reprimanded verbally and in writing on April 13, 2017, he was not. First, the Internal Revenue Manual ("IRM") does not contemplate an "oral reprimand." Second, the e-mail Plaintiff contends is a letter of reprimand, while simultaneously contending that it is a "summary of the[] April 13, 2017 conversation," 2d Am. Compl. ¶ 30, is not a letter of reprimand. The e-mail is not a letter that states that it is a letter of reprimand; that repetition of any misconduct or failure to correct, change, or improve misconduct will result in further disciplinary action; it does not identify Plaintiff's appellate rights; or state that a copy of the written reprimand will be placed in the Official Personnel Folder. At most, Plaintiff was counseled verbally and in writing. IRM 6.751.1.16.2(6)-(7).

Contrary to Plaintiff's contention, Plaintiff's within grade increase ("WGI") was not denied under "false and fraudulent facts and specifications." 2d Am. Compl. ¶ 31(h). Plaintiff's WGI was delayed by sixty days, not denied, to extend his rating cycle and allow him the opportunity to improve his performance to an acceptable level of competence and be eligible for his WGI. Plaintiff was not eligible for a WGI based on his performance appraisal for 2015 to 2016. Similarly, Plaintiff's performance for 2016 to 2017 was also lacking. When pressed to identify what facts and specifications were false or fraudulent, Plaintiff merely provided excuses for why he did not do his job. Plaintiff appears to believe that the specifications in the June 30, 2017 letter are false and fraudulent because they do not include his various excuses. Nevertheless, Plaintiff's WGI was delayed for legitimate reasons.

Further, Plaintiff conceded that Paragraph 31(i) of the Second Amended Complaint contains a typo and SSA Wingered "issued a successful performance evaluation" on September 15, 2017, not an unsuccessful performance evaluation. However, Plaintiff maintains that the September 15, 2017 letter still forms part of his hostile work environment claim. Plaintiff contends

that "[b]ecause the letter says, 'Over the next 12 months, if you do anything similar like this, you may be terminated'" then SSA Wingerd can "make additional false claims, or devious or deceptive type statements about [him] and then [he] might be fired." SMF ¶ 92. The letter says, "In accordance with Office of Personnel Management Regulations, if your performance again becomes unacceptable before June 30, 2018 I may recommend your removal or reduction in grade/payband without affording you an additional opportunity to improve your performance." SMF ¶ 93. Objectively, the September 15, 2017 does not constitute harassment.

In short, the second element weighs against finding that the harassment was objectively severe.

### c. Whether the Conduct is Physically Threatening or Humiliating, or a Mere Offensive Utterance

As to the third factor, the allegedly offensive conduct was not physically threatening or particularly humiliating. Again, the lack of references to religion in the alleged harassment undermines Plaintiff's claim. Assuming, *arguendo*, SSA Wingerd actually made the alleged statement, the statement, however inartful, reflects a reasonable understanding that certain holidays in the Muslim and Jewish faith are observed over multiple days. Moreover, the statement is indicative of confusion associated with Plaintiff's observance of Easter before it occurred and after he indicated that he would be working on the already-late SAR for the CE investigation prior to his departure to Puerto Rico. The alleged statement is a minor and tangential reference to Plaintiff's religion that does not suffice for purposes of showing a hostile work environment. Consequently, this factor weighs against finding that the harassment was objectively severe.

### d. Whether the Conduct Unreasonably Interferes with the Employee's Job Performance

As to the fourth factor, even if the offensive conduct interfered with Plaintiff's job performance, the first three factors weigh in favor of finding that the conduct experienced by Plaintiff was not objectively severe or pervasive enough to constitute a hostile work environment. The harassing conduct was simply too infrequent; did not permeate the workplace with discriminatory intimidation, ridicule, and insult; and was not physically threatening or humiliating.

In addition to the factors weighing in favor of finding that Plaintiff was not subject to severe or pervasive harassment, the Eleventh Circuit has affirmed summary judgment in favor of employers on religious-based hostile work environment claims when the evidence showed conduct far more egregious and repetitive than what is established here. *See Jones v. United Space Alliance, L.L.C.*, 170 F. App'x 52, 53–56 (11th Cir. 2006) (holding that alleged harassment was not objectively severe or pervasive when the record showed that a manager made derogatory remarks based on the plaintiff's religion, a coworker removed a flyer advertising the plaintiff's church's events, a manager told the plaintiff to remove a lanyard that had "Jesus" printed on it, a manager told the plaintiff not to leave his Bible on his desk, and the plaintiff was asked to turn down religious music played at work); *MackMuhammad v. Cagle's Inc.*, 379 F. App'x at 801, 805 (holding that the Muslim plaintiff failed to prove that the harassment he was subjected to was severe or pervasive when supervisors called him "Bin Laden" or "Muhammad-man" over the radio and intercom, asked the plaintiff about his religion, and commented on the plaintiff's religious dietary restrictions); *Richardson*, 185 F. App'x at 790–91 (holding that alleged harassment was not objectively severe or pervasive when the plaintiff's supervisor referred to him more than fifty times as a "preacher man" and other employees commented on the plaintiff's religion and request for accommodation); *Alansari*, 388 F. App'x at 905 (holding that a Muslim plaintiff's hostile work environment failed because his coworkers' "solicitations to go to church because 'Jesus would

12

save' him, other comments about his Muslim religion, and [] playing of Christian music on the radio . . . did not rise to a threatening or humiliating level").

Accordingly, Plaintiff has failed to establish that he experienced harassment that was severe or pervasive.

### C. Conclusion

Because a reasonable fact-finder could not conclude that harassment was motivated by Plaintiff's religion, nor was it severe or pervasive enough to alter the terms and conditions of his employment, the Court should grant summary judgment in favor of the Secretary.

Respectfully submitted,

**MARKENZY LAPOINTE**
**UNITED STATES ATTORNEY**

By: *Amy L. Soto*
AMY L. SOTO
ASSISTANT U.S. ATTORNEY
Florida Bar No. 124858
E-Mail: amy.soto@usdoj.gov
99 NE 4th Street, Suite 300
Miami, Florida 33132
Telephone: (305) 961-9368

13