**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

**CASE NO. 21-CV-60976-HUNT**

JOHN F. BATES,
              Plaintiff,

vs.

JANET YELLEN, as
Secretary, U.S. Department
of the Treasury, Internal
Revenue Service,
              Defendant.

_____/

## PLAINTIFF'S RESPONSE TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, John F. Bates, by his undersigned counsel, and pursuant to Local Rule 56.1 of the Local Rukes of the United States District Court for the Southern District of Florida and Rule 56 (c) of the Federal Rules of Civil Procedure, hereby files this Response to the Defendant's Motion for Summary Judgment. In support of this Response, the Plaintiff states as follows:

**I.**
## PRELIMINARY STATEMENT

There are sufficient disputed facts in the record, to allow the Plaintiff's hostile work environment claim, to be ultimately submitted for determination by the trier of fact. Here, it is disputed, whether supervisory personnel, namely Karen Wingerd, initially engaged in religious discriminatory conduct against the Plaintiff. The second collateral issue which remains in dispute, is whether that initial incident of discrimination, ultimately lead to a slippery slope of untoward

1

ridicule, intimidation, and harassment, against the Plaintiff, jeopardizing his status as a federal employee, thereby forming the basis of the hostile work environment claim.

Plaintiff, John F. Bates ("BATES") has articulated and set forth sufficient factual elements of a hostile work environment claim, enabling him to proceed for a final determination by the trier of fact. Unfortunately, the workplace discrimination against the Plaintiff began with the uttering of religious based discriminatory comments by his immediate supervisor, Karen Wingerd. ("WINGERD") According to the Plaintiff's testimony, immediately after returning to work, subsequent to observing a religious holiday, Easter, during the weekend of April 7, 2017, failed to appreciate the length and the nature of BATES' religious celebration, and disparaged him for his observance, whereby she stated:

"I could understand if you were Muslim or Jewish, but Easter is just one day."[1]

WINGERD did not specifically deny that she made of the offensive religious based comment.

**By Mr. Berkowitz:**

**Q**. It also indicates in this EEO Complaint[2] that, Supervisory Special Agent Karen Wingerd made verbal and written discriminatory statements about—against me—and my religious practices.

What is your response to that?

---

[1] *See*, the Declaration of BATES, attached to the Defendant's Motion, as **EXHIBIT C**, at Paragraph 61. BATES and his family belong to a specific denomination of Christianity, where the Easter celebration continues for a period of three days. *Id.*

[2] The EEO Complaint being referenced is the Plaintiff's formal complaint of discrimination in the EEO administrative process, which is attached hereto, as **EXHIBIT A**.

**Ms. Soto**: Objection, form.

**The Witness**: No, I don't think so.

**By Mr. Berkowitz:**

**Q.** What do you mean, 'I don't think so,' what does that mean?

**A.** 'Cause I don't know his . . . his perspective.

**Q.** Okay, then it specifically says, SSA Karen Wingerd specifically stated 'I can understand if you were Muslim or Jewish, but Easter is just one day.' Did you make that comment, ma'am?

**Ms. Soto**:  Objection, form.

**The Witness**:  I don't recall that, no.

**Mr. Berkowitz**:  Okay.

**The Witness**:  I don't recall it, no.

**By Mr. Berkowitz:**

**Q.** When you say, "I don't recall, does that mean it didn't happen, or you just don't recall?

**Ms. Soto**:  Objection. Form.

**The Witness**: It means both. I don't recall. It was six years ago.


**By Mr. Berkowitz:**

"Previously, when I asked you the question, when I posed the statement, 'Supervisory Special Agent Karen Wingerd made verbal and written discriminatory statements against me and my religious practices,' I believe you said something like, it depends on your perspective. What did you mean by that?"

> **Ms. Soto**:  "Object to the form."
>
> "Go ahead."

3

**The Witness**:

"Everybody has their own perspective. I mean, when I say, the sky is blue, you may take that differently than what Amy does, or I do. I mean, everyone has their own perspective on language. So, when it comes to religion, I don't know his perspective. So, I don't know, you know, if anything I said six years ago, he would think is religious—religiously—connected. And it's hard to answer that question."[3]

Subsequent to this statement of overt and egregious religious discrimination, by WINGERD, to BATES, his position in the workplace generally became largely untenable, his employment conditions were materially altered; and Plaintiff was placed on the "fast track," toward a prompt termination, based on the following predicate acts of harassment, ridicule and intimidation, perpetrated by his immediate supervisor, WINGERD:

(i)     WINGERD had no knowledge, if BATES was entitled to a religious accommodation, under the Agency's Internal Revenue Manual ("IRM"), based on his religious observances, during the weekend of April 7, 2017,[4] to April 9, 2017, *see*, the *Deposition of WINGERD*, attached hereto, as **EXHIBIT B**, at **T: 29**;

(ii)    WINGERD could not recall, if in considering possible discipline for BATES, she considered an analysis under the *Douglas factors*,[5] indisputably, the disciplinary

---

[3] *See*, the *Deposition of WINGERD,* attached hereto, as **EXHIBIT B**, at **T: 45—46.**

[4] April 7, 2019, was designated, as BATES' Good Friday. *See,* the *BATES Deposition*, attached hereto, as **EXHIBIT C**, at **T: 219**.

[5] *See*, *Douglas* v. *Veterans' Administration,* 5 M.S.P.R. 280 (1981).

4

calculus for federal employees, *see*, the *Deposition of WINGERD*, attached hereto, as **EXHIBIT B**, at **T: 15**;

(iii)    WINGERD contended that BATES, was in an, "on call" status, twenty four (24) hours per day, seven (7) days, per week,[6] even if the Plaintiff was not on duty, *see*, the *Deposition of BATES*, attached hereto, as **EXHIBIT C**, at **T: 137—138, 142, 151, 217**[7]; and in addition, WINGERD subsequently and apparently recognized the apparent error of management, by stating in a Group Meeting, which was held on April 28, 2017, that responses to her telephone calls, were to be made, "as soon as possible," under a "standard of reasonableness," *Id.*, at **T: 12—13**;

(iv)    As a very experienced Internal Revenue Service Agent with over twenty (20) years of experience,[8] as a direct result of the meeting with WINGERD on April 13, 2017; BATES' job duties were significantly downgraded by WINGERD, he was assigned to "desk duty,"[9] on an indefinite basis, and he was prohibited from assisting other

---

[6] This hostile state of affairs apparently only applied to BATES. *See*, the *BATES Deposition*, attached hereto, as **EXHIBIT C**, at **T: 221**.

[7] In the disciplinary memorandum which following BATES' April 13, 2017, meeting with WINGERD, his perception was even if he was in church, he was in an, "on call status," and he was required to respond to WINGERD immediately, , *see*, the *Deposition of BATES*, attached hereto, as **EXHIBIT C**, at **T: 152.**

[8] BATES had been hired by the Agency, in May of 2001. *See*, the *Deposition of BATES*, attached hereto, as **EXHIBIT C**, at **T: 64**.

[9] *Id*, *see*, **EXHIBIT C**, at **T: 97**, BATES was ostracized from other employees in the workplace. *Id*, at **T: 103**.

Agents in the office, with their work, *see*, WINGERD's email communication, dated April 13, 2017, to BATES, attached to the Defendant's Motion, as **EXHIBIT E**;

(v)     On May 12, 2017, less than thirty (30) days after the April 13, 2017, meeting, BATES was specifically singled out by WINGERD, for a proposed suspension without pay, apparently, based on his inability to be "on call," twenty-four hours per day, seven days, per week, *.see*, the *Deposition of BATES*, attached hereto, as **EXHIBIT C, at T: 14, 142**;

(vi)    WINGERD would harass BATES about other employees, for example, asking BATES regarding the whereabouts of a co-worker, Scott Johnson, *Id.* at **T:143— 144, 147**; he would fail to report for work and he did not incur any adverse consequences, *Id.*; and in addition, other employees in BATES work group, received extremely lenient disciplinary treatment, a co-worker would not come to work for thirty days, without a computer, and no discipline would be imposed, *see*, the *Deposition of BATES*, at **T: 102—103[10]**;

(vii)   On September 15, 2017, WINGERD informed BATES, through correspondence, that any further deficiencies in his job performance, over the course of the next year, would result in his termination from employment, *see*, the *BATES Deposition*,

---

[10] These incidents occurred after April of 2017. *Id*, at **T: 143—144**. WINGERD also allowed other employees in her Group to have "flex time," or "glide time," for example, they could go home after an enforcement action, but not BATES. *Id.*, at **T: 145.**

attached hereto, as **EXHIBIT C**, at **T: 146, 152**; in summary, there was a threat of employment termination, because BATES was informed that if performance becomes unacceptable, prior to June 30, 2018, he may be recommended for removal from the federal service, without providing a further opportunity to improve his performance;[11]

(viii)   Although BATES had the requisite qualifications and experience, he was denied the opportunity to serve as acting supervisor on numerous occasions, or even assist co-workers to the detriment of his work group, *Id.*, **T: 167—168**; and

(ix)   The denial of the Plaintiff's Within Grade Increase, on or about June 30, 2017, contained numerous false statements, *see*, the *BATES Deposition*, attached hereto, as **EXHIBIT C**, at **T: 203;** BATES contended that he was indeed meeting his performance expectations, and that, he did not deserve, and his performance did not warrant the imposition, of what actually amounted to, a performance improvement plan.[12]

---

[11] *See.* the *Deposition of Bate*s, attached hereto as **EXHIBIT C, Vol. II**, at **T: 68—69.** Moreover, a sixty-day hold was placed on BATES' within grade increase, based on false information, the Plaintiff reasonably perceived that he was going to be subjected to termination. *Id.*, at **T: 70--71.**

[12] *See*, the *BATES Deposition*, attached hereto, as **EXHIBIT C**, at **T: 223.** The Plaintiff was presented with a rating period which would not have applied to the July, 2017, Within Grade Increase. *Id* at 226. In addition, WINGERD falsely claimed that BATES failed to meet certain deadlines, when he did not have the resources, or the requisite support, to do so. *Id*, at 237. The allegations of a deficient work product, submitted by WINGERD, and produced by BATES, were false. *See*, the *Deposition of BATES*, **Vol. II, T: 33**. WINGERD's work was so suspect that BATES

66. Disputed in part, WINGERD "walked back," her prior position, that she could call employees and expect a call back, when they were not on duty, during nights and weekends. [*See, the Deposition of BATES*, attached hereto, as **EXHIBIT A, at T: Vol, I, 141—142**].

67. Undisputed.

68. Undisputed.

## Within Grade Increase

69. Undisputed.

70. Disputed, since Plaintiff maintains that there were numerous incorrect statements, in the June 30, 2017, letter, denying the within grade increase, BATES should have been eligible for the within grade increase, but instead, he was in effect, issued a Performance Improvement Plan. *See, the Deposition of BATES*, attached hereto, as **EXHIBIT A at T: Vol, I, 223—226.** The performance appraisal needs to apply for the current rating period in the within grade increase analysis. *Id*., at **T: 229—230.**

71. Admitted.

72. Admitted

73. Disputed, the cited rating by management, was not the applicable period for a July, 2017 within grade increase. *See, the Deposition of BATES*, attached hereto, as **EXHIBIT A, at T: 229—230.** The Plaintiff maintains that there were numerous incorrect statements, in the June 30, 2017, letter, denting the within grade increase, BATES should have been eligible for the within grade increase; but instead, he was, in effect, issued a Performance Improvement Plan. *See, the Deposition of BATES*, attached hereto, as **EXHIBIT C, at T: Vol, I, 223—226].**

74. Disputed, the Plaintiff maintains that there were numerous, incorrect statements, in the June 30, 2017, letter, denying the within grade increase; BATES should have been eligible for the within grade increase, but instead, he was, in effect, issued a Performance Improvement Plan. *See, the Deposition of BATES*, attached hereto, as **EXHIBIT A, at T: Vol, I, 223—226].** Moreover, the cited rating by management, was not the applicable period, for a July, 2017 within grade increase. *See, the Deposition of BATES*, attached hereto, as **EXHIBIT A, at T: 229—230.**

and summary judgment on such evidence is improper.' *Pedersen* v. *Department of Justice*, EEOC Request No. 05940339 (February 24, 1995).

We further note that the hearing process is intended to be an extension of the investigative process, designed to 'ensure that the parties have a fair and reasonable opportunity to explain and supplement the record and to examine and cross-examine witnesses.' *See*, EEO Management Directive 110, as revised, November 9, 1999. Chapter 6, page 6—1; see also, 29 C.F.R. 1614.109 © and (d). 'Truncation of this process, while material facts are still in dispute and the credibility of witnesses is still ripe for challenge, improperly deprives complainant of a full and fair investigation of her claims.' *Mi S. Bang* v. *United States Postal Service*, EEOC Appeal No. 01961575 (March 26, 1998). *See also*, *Peavley* v. *United States Postal Service*, EEOC Request No. 0590528 (October 1, 1996); *Chronister* v. *United States Postal Service*, EEOC Request No. 05940578 (April 23, 1995).

In this case, there are indeed material facts in dispute. *See*, *Reeves* v. *Sanderson Plumbing Products*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The Plaintiff alleges that he was initially subjected to egregious religious discrimination; and following the filing of an Equal Employment Opportunity ("EEO") Complaint, he basically became a persona non grata, in the workplace, being subjected to ridicule, harassment and intimidation, such that he was the victim of a hostile work environment. *See*, *Miller* v. *Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Here, the employer is strictly liable for the discriminatory conduct of its supervisory personnel, namely, WINGERD. *See*, *Henson* v. *Dundee*, 682 F.2d 897 (11th Cir. 1982). At the very least, whether WINGERD engaged initially in discriminatory religious based discrimination, is in dispute, and at the very least, discriminatory discrimination can be inferred, by WINGERD's stated unfamiliarity with a required element of an Agency disciplinary process, the *Douglas factors*, and the failure to follow that procedure standard procedure, *see*, *Franks* v. *Indian Rivers Mental Health Ctr.*, 2012 U.S. Dist. LEXIS 142083 (N.D. Ala. 2012), creates an inference of pretext, ultimately,

9

an issue for determination by the trier of fact. The further issue for the trier of fact, is whether that initial comment of egregious discrimination, by WINGERD, resulted in a slippery slope of continued harassment, ridicule and intimidation, and or the creation of a hostile work environment.[13]

### B) FROM A FACTUAL STANDPOINT, THE HOSTILE WORK ENVIRONMENT CLAIM WAS SUFFICIENTLY SEVERE AND PERVASIVE, TO BE SUBMITTED TO THE TRIER OF FACT.

An employer is subject to various liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate authority over the employee. *See, Farragher* v. *City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *see also, Bruno* v. *Monroe County*, 383 Fed. Appx. 845 (11th Cir. 2010). The employer will be strictly liable for the hostile work environment, if the employer takes a tangible employment action, against the victimized employee. *Farragher,* at 807, 118 S.Ct. at 2293. Here, at the very least, the Plaintiff's job functions were drastically reduced; and there was a material change in the status of his employment, since his job duties were substantially changed. *See*, the *BATES Deposition,* attached hereto, as **EXHIBIT C, Vol. I, T: 124**; and a substantial change in job duties or overall work conditions does constitute an adverse employment action, and hence, a tangible employment action. *See*, *Burlington Industries* v. *Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). A significant change in job responsibilities constitutes a tangible employment action. *Id*, at 761, 118 S.Ct. 2257.

---

[13] WINGERD became aware of BATES' EEO activity on April 24, 2017. *See*, WINGERD's EEO Affidavit, attached hereto, as **EXHIBIT D**, at **p. 14**.

"An employer violates Title VII simply by creating or condoning an environment at the workplace which significantly and adversely affects [the psychological well being of] an employee because of his race, ethnicity, regardless of any other tangible job detriment to the employee." *Henson*, 682 F.2d at 901, *see also*, *Rogers* v. *EEOC*, 454 F.2d 234, 238 (5th Cir. 1971), cert. denied, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972); *Calcote* v. *Texas Educational Foundation, Inc.*, 458 F.Supp. 231, 237 (W.D. Tex. 1976), aff'd, 5678 F.2d 95 (5th Cir. 1978); *Accord*: *Johnson* v. *Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1978). Whether the harassment is severe or pervasive enough to seriously affect the psychological well-being of employees is a question to be determined by the totality of the circumstances. *Henson,* at 906—907.

Liability can be imposed under either of two theories. Direct liability is incurred when an agent of the employer is responsible for the behavior that comprises the hostile work environment and the agent's actions were taken within the scope of the agency. On the other hand, indirect liability where the hostile work environment is created by one who is not the plaintiff's employer, who is acting outside the scope of agency, and the plaintiff can establish that the employer knew or should have known of the harassment and failed to take prompt effective remedial action. *See*, *Robinson* v. *Jacksonville Shipyards*, 760 F.Supp. 1486 (M.D. 1991).

In order to prove discrimination, the plaintiff must demonstrate that "the environment was both subjectively and objectively hostile." *Reeves* v. *C.H. Robinson Worldwide, Inc.,* 594 F.3d 798, 809 (11th Cir. 2010) The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms and conditions of employment, and this subjective perception must be objectively reasonable." *Id*. The objective severity of the harassment should be judged from the

perspective of a reasonable person in the plaintiff's position, considering all of the circumstances"

*Id.*

As the Supreme Court has observed, '[t]he real social impact of workplace behavior often depends on a constellation of circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id,* at 810 (quoting *Onscale* v. *Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81—82, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). Taking this constellation of circumstances into consideration in the instant case, the Plaintiff has met his burden of overcoming the summary judgment motion; and consequently, the remaining hostile work environment claim should be submitted to the ultimate finder of fact, the jury, for ultimate consideration.

WINGERD's deposition testimony was highly disingenuous, to say the least, she apparently claimed that an overtly discriminatory statement was subject to one's "perspective," or perhaps interpretation.[14] Moreover, she apparently had no idea on how to implement disciplinary process under the *Douglas factors,* she admitted that she had no training in the application of the IRM Manual, and she did not know if BATES was entitled to a religious accommodation, under the IRM Manual. Perhaps most disturbing, at her deposition, WINGERD refused to identify the veracity of her EEO Affidavit, which had been taken in the administrative proceeding, and even though the EEO affidavit definitively confirmed the date when WINGERD obtained knowledge of BATES' prior EEO activity, in the administrative case, she refused to acknowledge the

---

[14] *See*, the *Deposition of WINGERD,* attached hereto, as **EXHIBIT B**, at **T: 45—46.**

notification date.[15] WINGERD could not even confirm that BATES was "on duty," during the critical time period in this case, from April 7, 2017 to April 9, 2017. *See*, the *Deposition of WINGERD*, attached hereto, as **EXHIBIT B, at T: 40.**

This evasive testimony, coupled with the constellation of adverse acts, which had their genesis in WINGERD's overt discriminatory comment, albeit disputed, precludes the entry of summary judgment in the Agency's favor on the hostile work environment claim. Disputes over facts which might affect the outcome if the suit, will preclude the entry of summary judgment. *See*, *Matthews* v. *Conley*, 2022 U.S. Dist. LEXIS 52967, n. 2 (M.D. Ga. 2022).

### III.
### CONCLUSION

The record reflects disputed issues of fact on critical issues which must be submitted to the ultimate trier of fact, the jury. Following an act of overt discrimination by the Plaintiff's supervisor, both his professional reputation and his job were threatened by a series of predicate acts, which clearly represented acts of ridicule, harassment and intimidation, the touchstone of a hostile work environment claim.

The series of predicate acts both objectively and subjectively created the existence of a hostile work environment; the Plaintiff was ultimately pushed to the brink of termination, based on a series of arguably false evaluations and false statements which damaged his status as an employee, and completely changed and altered his work environment, The ultimate factual issues in this case should be left to a jury for final determination, there are too many disputed material

---

[15] *Id*, at **T:29—30, 33—34, 40.**

facts to warrant an adjudication, based on a Summary Judgment Motion. Therefore, the Plaintiff respectfully requests that the Defendant's Motion for Final Summary Judgment be denied.

<div style="margin-left: 50%;">

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Plaintiff
One Ten Tower
110 S.E. 6th Street
Suite 1700
Ft. Lauderdale, Florida 33301
(954) 527-0570 Telephone
(954) 281-5881 Telecopier
E-mail: labor@markjberkowitz.com
Fla. Bar No. 369391

/s/ Mark J. Berkowitz
Mark J. Berkowitz

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent on this 8th day of January, 2024, by the Court's electronic filing system, CM/ECF, to Amy Lynn Soto, Assistant U.S. Attorney, 99 N.E. 4th Street, Suite 300, Miami, Florida 33132.

<div style="margin-left: 50%;">

/s/ Mark J. Berkowitz
Mark J. Berkowitz

</div>