UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No.: 21-cv-60976-HUNT

JOHN F. BATES, an individual,

    Plaintiff,

v.

JANET YELLEN, as Secretary,
U.S. Department of the Treasury,
Internal Revenue Service,

    Defendant.
_____/

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Janet Yellen, as Secretary of the Treasury (the "Secretary"), by and through the undersigned Assistant United States Attorney, hereby files her reply in support of her Motion for Summary Judgment and Incorporated Memorandum of Law ("Motion for Summary Judgment") (D.E. 58), and in support thereof, states as follows:

**Preliminary Statement**

In February 2017, Plaintiff, John F. Bates, proposed a March 31, 2017 target due date for a draft of the Special Agent Report ("SAR") for the CE investigation. On April 5 and 7, 2017, Plaintiff twice informed Special Supervisory Agent ("SSA") Karen Wingerd that he had hoped to submit a draft of the already-late SAR by either close of business Friday, April 7, 2017, or Sunday, April 9, 2017—prior to his departure to Puerto Rico on Monday, April 10, 2017, to assist in the execution of a search warrant.

Plaintiff left the office on Friday, April 7, 2017, intending to return to the office over the weekend to work on the SAR. When Plaintiff arrived at home, he was informed by his wife that

they would be celebrating Easter that weekend and she did not want either of them to be working over their Easter weekend.[1] Plaintiff did not inform SSA Wingerd that he would be unable to complete the SAR before he left for Puerto Rico nor did he inform SSA Wingerd of his Easter celebration.

Less than an hour after Plaintiff left the office on Friday, April 7, 2019, SSA Wingerd sent Plaintiff an e-mail requesting that he send her a copy of the SAR by e-mail because she could not find it in the processing folder. Plaintiff did not respond. On Tuesday, April 11, 2017, SSA Wingerd sent Plaintiff an e-mail requesting that he call her, and she called and left a voicemail for him. Plaintiff did not respond to SSA Wingerd's e-mail, but allegedly called her on Wednesday, April 12, 2017, without leaving a voicemail.

In the morning of Thursday, April 13, 2017, upon Plaintiff's return to the office, and after she walked to Plaintiff's cubicle, SSA Wingerd received a woefully incomplete draft of the SAR. In the afternoon of Thursday, April 13, 2017, SSA Wingerd and Plaintiff met. It was at that meeting that Plaintiff, for the first time, informed SSA Wingerd that he had been observing Easter the weekend prior. It was at that meeting that Plaintiff alleges that SSA Wingerd said, "I could understand if you were Muslim or you were Jewish, but Easter is just a day." 2d Am. Compl. ¶ 28.

Before Plaintiff informed her that he had been observing Easter the weekend of April 7 to April 9, 2017, SSA Wingerd was already working with Rosalind Langford, Labor Relations Specialist, for guidance on how to address Plaintiff's various conduct and performance issues. In the morning of Thursday, April 13, 2017, SSA Wingerd informed Ms. Langford that Plaintiff had been reminded on Friday, April 7, 2017, that if he did not meet his due dates, he would not be allowed to assist other agents on their cases. SSA Wingerd explained that she was thinking of

---

[1] In 2017, Easter Sunday was observed on April 15.

recommending a five-day suspension to the Special Agent in Charge for Plaintiff's insubordination. SSA Wingerd also informed Ms. Langford that Plaintiff had previously received a minimally successful rating for the June 1, 2015 to May 31, 2016 rating period. SSA Wingerd also explained that with his current performance, Plaintiff would not be fully successful in all critical job elements.

None of these facts are in dispute. Accordingly, the Secretary moved for summary judgment, demonstrating that she was entitled to judgment as a matter of law on Plaintiff's claim for religious-based hostile work environment. Plaintiff's Response to the Defendant's Motion for Summary Judgment ("Response") (D.E. 62) and Amended Statement of Disputed Facts, in Opposition to the Defendant's Motion for Summary Judgment (D.E. 70) fail to rebut this conclusion with admissible evidence from the record. Instead, Plaintiff references immaterial facts in an attempt to mask the fact that his claim fails as a matter of law. His Response makes it patently evident that Plaintiff relies on one alleged statement to maintain that the facially religion-neutral conduct he complains of is based on his religion—much of which conduct was contemplated before SSA Wingerd learned that Plaintiff had been observing Easter early.

Plaintiff's claim for hostile work environment fails because he fails to point to any evidence that ties the allegedly harassing conduct to his religion. Further, the allegedly harassing conduct that Plaintiff complains of falls far short of the requisite "severe or pervasive" showing.

## Argument

As a preliminary matter, Plaintiff's Response appears to assert a retaliatory hostile work environment claim.

> Plaintiff alleges that he was initially subjected to egregious religious discrimination; and following the filing of an Equal Employment Opportunity ("EEO") Complaint, he basically became a persona non grata, in the workplace, being subjected to ridicule, harassment and intimidation, such that he was the victim of a hostile work environment.

3

Resp. at 9. Similarly, Plaintiff appears to conflate his hostile work environment claim with a disparate treatment claim. Plaintiff's Response argues that

> whether [SSA Wingerd] engaged initially in discriminatory religious based discrimination, is in dispute, and at the very least, discriminatory discrimination can be inferred by [SSA Wingerd's] stated unfamiliarity with a required element of an Agency disciplinary process, the *Douglas factors*, and the failure to follow that procedure standard procedure, *see*, *Franks v. Indian River Mental Health Ctr.*, 2012 U.S. Dist. LEXIS 142083 (N.D. Ala. 2012), creates an inference of pretext, ultimately an issue for determination by the trier of fact.

Resp. at 9-10.

To be clear, the Second Amended Complaint only pleads a religious-based hostile work environment claim. 2d Am. Compl. ¶¶ 57 ("Plaintiff was subjected to unwelcome and actionable religious-based harassment . . . because of his status as a Christian male"), 58 ("The religious based harassment . . . were specifically grounded upon Plaintiff's status, as a Christian male"), 59 ("The religious based harassment . . . based upon Plaintiff's status as a Christian male"), 60 ("The actionable religious based harassment"). Discovery is closed, and Plaintiff did not seek to amend his Second Amended Complaint. Plaintiff is barred from asserting new claims in his Response. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

1. **Plaintiff Concedes That His Alleged Harassment Was Not Based on His Religion or Otherwise Fails to Point To Any Evidence That Ties the Allegedly Harassing Conduct to His Religion**

"[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Garcia v. Neb. Student Loan Program, Inc.*, No. 15-20716-CIV, 2015 U.S. Dist. LEXIS 185588, at *2 (S.D. Fla. Apr. 17, 2015); *see also United States v. F.E.B.*, 52 F. 4th 916, 933 (11th Cir. 2022) ("District courts resolving summary-judgment motions are not on buried-

treasure hunts. And a passing reference to an issue in a brief is not enough.") (internal alterations accepted and quotation marks omitted); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012).

In the Motion for Summary Judgment, the Secretary established that Plaintiff cannot, as a matter of law, establish a connection between the allegedly harassing conduct and his religion. Mot. for Summ. J. at 5-6. Plaintiff does not controvert, and, therefore, concedes, that he failed to establish a connection between his religion and the facially religion-neutral conduct of which he complains. Because Plaintiff does not devote any portion of the Response to contest the Secretary's argument that Plaintiff has failed to tie the allegedly harassing conduct to his religion, the Court should treat his silence as a concession and grant summary judgment in the Secretary's favor.

Should the Court decline to deem Plaintiff's silence as a concession, then the Court should find that Plaintiff's speculation is insufficient to show that his alleged harassment was based on his religion. Despite nearly 400 pages of testimony, there is no record evidence that establishes a connection between the allegedly harassing conduct and Plaintiff's religion. Moreover, Plaintiff has offered no authority—binding or persuasive—suggesting that an isolated comment, without more, proves discriminatory motivation for all other conduct.

The Secretary cited to *Graham* in her Motion for Summary Judgment, which is instructive on the issue of whether one isolated comment establishes discriminatory motivation for facially religion-neutral conduct. Mot. for Summ. J. at 5. In *Graham*, the court was unable to conclude that the conduct of the alleged harassers was based on the plaintiff's protected characteristic. *Graham v. Mem'l Health Univ. Med. Ctr.*, Case No. CV411-316, 2013 U.S. Dist. LEXIS 141071, at *13 (S.D. Ga. Sept. 30, 2013). There, the plaintiff contended that she was subject to continual harassment in the form of "yelling and screaming at [the plaintiff], requesting assistance and then refusing it from

5

[the plaintiff], unwarranted warnings and threats, intensive and unnecessary oversight of [the plaintiff's] work, and overloading [Plaintiff] with work." *Id*. at *3 (internal quotation omitted). The plaintiff cited to only one instance where a comment referencing race was made. *Id*. at *13. The court concluded that while the isolated comment may have been racially offensive, it did not establish that the alleged harassers' conduct was racially motivated. *Id*. at *14-15 ("An isolated racial comment, without more, does not prove racial motivation for all other conduct."). Ultimately, the court found that the third element of a hostile work environment claim failed and summary judgment in favor of the defendant was appropriate. *Id*. at *15.

Here, the record is devoid of any evidence that any instance of Plaintiff's alleged harassment was religiously motivated. One alleged statement is insufficient to impute religious-based animus to his alleged harassment without more. As in *Graham*, the Court should find that Plaintiff has failed to establish a connection between SSA Wingerd's alleged comment and the conduct of which he complains.

For these reasons, Plaintiff has not met his burden to establish that his alleged harassment was based on his religion. The Court should grant summary judgment in the Secretary's favor.

**2. Plaintiff Concedes That His Alleged Harassment Was Not Sufficiently Severe or Pervasive or Otherwise Fails to Show That the Harassment Was Sufficiently Severe or Pervasive**

The Secretary conclusively established in her Motion for Summary Judgment that Plaintiff cannot establish that his alleged harassment was objectively severe or pervasive.

Although there is no Section "A," Section "B" of the Response is titled "FROM A FACTUAL STANDPOINT, THE HOSTILE WORK ENVIRONMENT CLAIM WAS SUFFICIENTLY SEVERE AND PERVASIVE, TO BE SUBMITTED TO THE TRIER OF FACT." Resp. at 10. Citing to *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), the

Response states that an "employer will be strictly liable for the hostile work environment, if the employer takes a tangible employment action, against the victimized employee." Resp. at 10. Apparently arguing liability, which the Secretary does not contest on summary judgment, Plaintiff continues that "the Plaintiff's job functions were drastically reduced; and there was a material change in the status of his employment, since his job duties were substantially changed . . . and a substantial change in job duties or overall work conditions does constitute an adverse employment action, and hence, a tangible employment action." Resp. at 10.

Citing to *Henson v. Dundee*, 682 F.2d 897, 906-907 (11th Cir. 1982), the Response states that "[w]hether the harassment is severe or pervasive enough to seriously affect the psychological well-being of employees is a question to be determined by the totality of the circumstances." Resp. at 11. Additionally, in citing to *Reeves v. C.H Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010), the Response says

> In order to prove discrimination, the plaintiff must demonstrate that "the environment was both subjectively and objectively hostile." The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms and conditions of employment, and this subjective perception must be objectively reasonable." The objective severity of the harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all of the circumstances"

Resp. at 11-12 (quotations in original) (internal citations omitted).

Notably, Plaintiff fails to devote a single sentence of his Response to rebut the Secretary's argument that his alleged harassment was not sufficiently severe or pervasive to create a discriminatorily abusive work environment. The Court should treat his failure to do so as a concession and grant summary judgment in the Secretary's favor. *See* cases cited in Section 1, *supra.*

If the Court is disinclined to find that Plaintiff's failure to address the Secretary's argument is a concession, then the Court should find that the evidence does not demonstrate that the alleged

7

harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment. Instead of addressing whether the alleged harassment was frequent, severe, physically threatening or humiliating, or unreasonably interfered with his performance, Plaintiff relies upon SSA Wingerd's purported belief that a discriminatory statement was subject to perspective,[2] lack of knowledge on how to implement discipline using the *Douglas* factors,[3] lack of training on the application of the IRM, lack of knowledge of Plaintiff's entitlement to a religious accommodation,[4]

---

[2] SSA Wingerd was asked for her response to the allegation that she had made "verbal and written discriminatory statements" about Plaintiff and his religious practices in his Equal Employment Opportunity ("EEO") complaint. Resp., Ex. B 44:23-45:2. SSA Wingerd answered, "No, I don't think so." *Id*. at 45:4. She was then asked what "I don't think so" meant, and she answered, "Cause I don't know his . . . his perspective." *Id*. at 45:6-8. Plaintiff's counsel asked SSA Wingerd what she meant by "it depends upon your perspective" in response to the allegation in Plaintiff's EEO complaint. *Id*. at 45:24-46:4. SSA Wingerd did not testify that "an overtly discriminatory statement was subject to one's 'perspective,' or perhaps interpretation." Resp. at 12. SSA Wingerd was asked about Plaintiff's generic and non-specific allegation in his EEO complaint, which *is* subject to Plaintiff's interpretation as *his* complaint. Notwithstanding, whether Plaintiff's allegation in his EEO complaint is subject to perspective is not material and has no bearing on whether SSA Wingerd harassed him on the basis of his religion.

[3] SSA Wingerd was asked if she was familiar with the *Douglas* factors, which she answered in the affirmative. *Id*. at 15:3-5. Over the undersigned's objection, SSA Wingerd answered in the affirmative that she was aware that the Internal Revenue Service had "guidelines for the implementation of discipline for IRS employees." *Id*. at 15:12-17. SSA Wingerd's testimony does not indicate that she had no idea on how to implement discipline using the *Douglas* factors. Nevertheless, whether SSA Wingerd considered the *Douglas* factors in considering Plaintiff's discipline is immaterial. Pursuant to the Internal Revenue Manual ("IRM"), "discipline" is defined as "measures taken by management that are intended to correct employee misconduct, and encourage employee conduct in compliance with the standards of conduct, policies, goals, work procedures, and office practices of the IRS and the Federal Service." IRM 6.751.1.2(6). Further, "disciplinary action" is defined to include an admonishment, a written reprimand, or a suspension of fourteen calendar days or less. IRM 6.751.1.2(5). Other than a suspension, which allegations do not form part of the Second Amended Complaint, as per the Court's Order on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, Plaintiff was not subject to discipline. When considering disciplinary action, "[a]n analysis by management of the Douglas Factors is required." IRM 6.751.1.3(5). *Douglas* factors are not used in performance-related actions.

[4] Plaintiff's counsel showed SSA Wingerd a one-page document without any identifiable features that purported to include language of IRM 9.11.4.01 and asked whether she recognized it. *Id*. at 29:9-18. Over the undersigned's objection, SSA Wingerd answered, "No, I don't know this exact document." *Id*. at 29:17-18. When asked if she was familiar with Paragraph 4 of the exhibit, SSA Wingerd answered that she did not know. *Id*. at 30:10-19. SSA Wingerd's testimony does not

or failure to identify her EEO affidavit. Such reliance fails to create an issue of material fact sufficient to defeat summary judgment.

For these reasons, Plaintiff has not met his burden to establish that he experienced harassment that was objectively severe or pervasive. The Court should grant summary judgment in the Secretary's favor.

A. Conclusion

For the reasons set forth herein and in the Secretary's Motion for Summary Judgment, summary judgment should be entered in favor of the Secretary.

Respectfully submitted,

**MARKENZY LAPOINTE**
**UNITED STATES ATTORNEY**

By: *Amy L. Soto*
AMY L. SOTO
ASSISTANT U.S. ATTORNEY
Florida Bar No. 124858
E-Mail: amy.soto@usdoj.gov
99 NE 4th Street, Suite 300
Miami, Florida 33132
Telephone: (305) 961-9368

---

indicate that she had no knowledge regarding Plaintiff's entitlement to a reasonable accommodation. Moreover, SSA Wingerd's knowledge as to Plaintiff's entitlement to a religious accommodation is immaterial. Plaintiff does not allege that he requested a religious accommodation or that he was denied one. *Compare* Compl. *with* 2d Am. Compl. In fact, Plaintiff could not have requested a religious accommodation because it is undisputed that he did not tell SSA Wingerd he would be observing the Easter holiday during the weekend of April 7, 2017 to April 9, 2017 until April 13, 2017. In the absence of knowing that Plaintiff would be observing the Easter holiday before it occurred, the Secretary was deprived of the ability to consider, much less grant, a religious accommodation.